Sarpy et al. vs. Hymel et al.

## No. 10,104.

### GEORGE SARPY ET AL. VS. ADÈLE HYMEL ET AL.

40   425
124  513
f124 516

Prescription does not run against the exercise of a servitude of drainage established by a police jury in pursuance of Section 6 of the act of 25th of February, 1813, on Bonnet Carré point and adjacent lands, in favor of one of the proprietors of an estate included in the system ordained, who participated in its establishment and afterwards resisted its repair and improvement,

A servitude having been establised under the police power, conferred by that statute, its control continues to reside in the police jury; neither party to it can prevent or oppose its repair or improvement; no individual can go, at his pleasure, on the premises or estate of another and make repairs on or improvements of such servitude he may deem necessary ; and such repairs or improvements can be made in pursuance of the authority and ordinances of the police jury only.

An appellee who has not filed a timely motion or prayer for an amendment of the judgmen appealed from can obtain no relief on appeal.

APPEAL from the Twenty-sixth Judicial District Court, Parish of St. John the Baptist. *Rost, J.*

*Henry Denis* for Plaintiffs and Appellees :

The police jury is empowered, under the provisions of acts of 1813 and 1814 (Rev. Stat., Sec. 2743), to ordain and establish the draining of the lands of Bonnet Carré point. 5 Ann. 424.

Police juries have the exclusive right, under those laws. to determine how lands within the points on the Mississippi river should be drained, without regard to their relative position as superior and inferior estates. 6 Ann. 97.

The courts will presume that the police jury exercise such power properly and judiciously. 12 Ann, 554.

Such power is a delegation of the police power of the State. It remains in force as long as it is not withdrawn by the State. It is as complete and sovereign in the municipal corporation as in the State itself. 39 Ann. 252; Cooley Const. Limit., p. 713 *et seq.*; Dillon Munic. Corp., 1 vol., 166 *et seq.*

The provisions of the code on the subject of servitudes do not apply to works of public or common utility. C. C., Art. 665.

*Berault & Chenet* on the same side.

*T. J. Semmes* and *Legendre* for Defendant and Appellant :

The code divides servitudes into natural, legal and conventional.

Natural servitudes result from the relative position of estates ; legal servitudes arise from the law, and conventional servitudes from contracts.

The code does not recognize the "police power" as a source of servitude.

A conventional servitude, operating on real estate, is a real right, a *jus in re*, and as such does not affect third persons unless recorded. C. C. 2266 ; Demolombe des Servitudes, No. 733; Aubry & Rau, Vol. 3, p. 75; Mourlon, Traité de Transcription, Nos. 115, 119; Lamarcis, Com. des Servitudes.

A right of servitude may be lost by non-usage for ten years. C. C. 3546–789; 34 Ann. 616 ; 15 Ann. 427; 1 R. 321.

In cases of non-usage of continuous apparent servitudes, prescription begins to run from the day that an act contrary to the servitude has been committed. C. C. 790; Duranton, Vol. 5, No. 685; Demolombe des Servitutles, No. 1009 ; Toullier, Vol. 3, No. 692; Aubry & Rau, p. 105.

Sarpy et al. vs. Hymel et al.

When the prescription of non-usage is opposed to the owner of the estate to whom the servitude is due, it is incumbent on him to prove that he or some person in his name has made use of the servitude as appertaining to his estate during the time necessary to prevent prescription. C. C. 783; 15 Ann. 427; Toullier, Vol. 3, Nos. 689-691; D. 39, L. 3, T. 12-20.

The lower estate is subject to the charge of receiving the waters that flow naturally from the higher estate. This servitude results from necessity and the laws of vicinage. 15 Ann. 681-497; 4 Ann. 168; 19 L. 351; 12 L. 504.

----

The opinion of the Court was delivered by

WATKINS, J. Plaintiffs are the widow and heir of Delord Sarpy and the owners of the Glendale plantation, having derived title from Norbert Rancon ; and the defendant is the owner of the Gold Mine plantation, having derived title from Thomas May.

These plantations are contiguous estates, and situated in close proximity to Bonnet Carré point, on the Mississippi river, and this controversy involves their mode of drainage.

The plaintiffs' contention is that the police jury, in pursuance of a special statute, established a plan or system of drainage for said plantations and others on Bonnet Carré point, and that defendant's author accepted same and bound her to it.

They seek the recognition and maintenance of the servitude of drainage thus established, and in support of it plead, *acquirendo causa,* the prescription of ten, twenty and thirty years.

The defendant denies the establishment of a servitude—legal, conventional or otherwise—on her property in favor of the plaintiffs' property ; and also denies the construction and ownership of a ditch in common between the two estates.

She avers that the ditch described in the plaintiffs' petition was constructed to drain lands other than those of plaintiffs, and that said ditch was never completed.

In the alternative, she avers that, in case the servitude claimed is found to have existed, same has been lost by *non*-usage for ten years and by the renunciation and remission thereof on the part of the plaintiffs and their authors.

In reconvention she claims that plaintiffs' lands are lower than hers and are subject to a natural servitude in favor of hers, and are bound to receive the waters that flow naturally from her lands. That, contrary to law, plaintiffs have erected dams and embankments at the boundary line of respondent's estate, which obstruct the natural flow of the waters from her lands, and thus interfere with the servitude due by plaintiffs estate to her own.

The record discloses the following salient facts, viz :

That the Gold Mine plantation has a front on the Mississippi river, which, at that place, flows due east to the extreme point of Bonnet Carré, and that from that point it flows due south, passing in front of Glendale plantation.

That Glendale extends back from the river in a due west course to a point at which it intersects the rear line of Gold Mine, which extends back from the river in a due south course ; the boundary line between them being a diagonal one extending from northeast to southwest.

The two plantations are situated at right angles with each other and constitute the west and south boundaries of Bonnet Carré point, while the river constitutes the north and east boundaries.

This intervening space is sub-divided into quite a number of plantations, which are owned by a number of different proprietors—all of which are separated from the swamp in the rear.

The natural course of their drainage is in a southwesterly direction, and that results, in part, from the fact that they are more elevated, and, in part, from the formation of a crevasse on the upper side of Bonnet Carré point. In consequence thereof both the rain and river waters, at high tide, were precipitated upon Glendale, to its great injury and damage.

Originally the course of Bayou Toné and that of some small coolies was from the river alone in a southerly direction across the central portion of Glendale, and that of Bayou Roussi from the river alone in a southwesterly direction diagonally across the rear portion of Gold Mine. From the latter there was an outlet which passed through the rear portion of Glendale.

In pursuance of Section 6 of the act of March 25, 1813, the police jury undertook the adjustment of the drainage of these different estates ; and on the 3d of June, 1850, adopted an ordinance in which provision was made for the appointment of a committee having authority to examine " the locality of Bonnet Carré point and adjacent lands," and with full authority " to open and clean out Bayou Toné and Bayou Roussi, *situated on said point,* down to the lower limit of the parish."

It was therein " resolved that the opening and cleaning of said bayous shall be at the common expense of the proprietors of the land forming Bonnet Carré point."

At a subsequent meeting of the police jury the committee made a report in which they recommended the dredging and cleaning of Bayou Toné, the cutting of a new ditch or canal from Bayou Tone to Bayou

Roussi, the digging and cleaning out of the latter as far as its junction with the Rancon canal, behind the Gold Mine plantation, at that time owned by May, and thence continued until it reached the swamp and "Bayon Pin" in the rear.

On the 1st of April, 1852, the committee entered into a contract with Pat Phelan "to have the Bonnet Carré point and adjacent lands drained and to make the canals and drains necessary for the same." He completed the construction of the canal from Bayou Toné to Bayou Roussi, dredged and deepened the latter, and completed the canal beyond Bayou Roussi to its intersection of Rancon canal; but he failed to complete about nine or ten arpents of the canal at the lower or outer end, which was necessary to make it reach Bayou Pin. Phelan brought suit against the police jury for a balance due him, and it resulted in a compromise whereby Phelan realized the full amount of his contract of $4000, less $650. It remains in that condition to this day.

This canal was denominated Company canal. It was begun at a point on the upper or northern boundary line of Glendale, a little east of where Bayou Toné intersects it, thence extended west on that line to its intersection of the eastern boundary of Gold Mine, and thence across Gold Mine until it intersected Bayou Roussi and made connection therewith.

Through this canal the waters of Bayou Toné and the drainage waters from the plantations on Bonnet Carré point were passed into Bayou Roussi and thence into the swamp in the rear of Gold Mine and Glendale, and by this means Glendale was relieved from distress and overflow during high water.

It appears that, at present and during the last several years, that portion of Bayou Roussi that intersects Gold Mine plantation and unites with Company canal has become obstructed with decayed vegetable matter, weeds and willow trees, and has become partially filled with dirt by means of the cultivation of its banks for a series of years, so that the flow of water into it from Company canal is retarded and the water backed up and thrown upon the plantations on Bonnet Carré point and Glendale, whereby the latter is frequently overflowed.

It thus appears that, if Bayou Roussi was opened and the water permitted to flow through it from Company canal, Glendale would be entirely relieved and Gold Mine would suffer little, if any, injury.

Because of the obstructions in Bayou Roussi and the defendant's objection to its being cleaned and deepened, the plaintiffs have

brought this suit for the recognition and re-establishment of Company canal and the deepening of Bayou Roussi.

It is a fact—one evidenced by this statement—that Glendale is now, and has been for many years, exclusively drained by means of Rancon canal, which extends from the river west, on its southern boundary, to the swamps in the rear. There is but little difference in the altitude and inclination of Glendale or Gold Mine, and there is but a small portion of the latter so situated as to naturally receive drainage from the former.

But, as an additional protection, one of plaintiffs' authors caused to be constructed, in 1828, a line of levee along the northern boundary of Glendale, and also upon the boundary line between it and Gold Mine, and the same has been since maintained. Company canal was constructed parallel with it on its northern boundary.

During the stress occasioned by high water and threatened overflows, plaintiffs and their authors have frequently felt constrained to open small culvert in these levees so as to pass a portion of the water through and thus obtain partial relief.

With Bayou Roussi thus obstructed, Bonnet Carré point and Glendale suffer from annual overflows, while Gold Mine has no serious interruption of her drainage.

Bayou Roussi has been constantly treated as a part of Company canal by the proprietors of plantations on Bonnet Carré point, and also by the plaintiffs and their authors, and they have frequently exercised the right to clean it of grass and weeds without objection on the part of the proprietors of Gold Mine. But the defendant has steadily refused to have it dredged or deepened.

This question of drainage has been a mooted one between the proprietors of Glendale and Gold Mine plantations for a great many years, and in 1850, prior to the establishment of Company canal by the police jury, there was litigation between Thomas May and Norbert Rancon, the object of which, on the part of the former, was to coerce the drainage of Bonnet Carré point and Gold Mine over Glendale, and to compel Rancon to demolish and remove the levee and embankments that had been established fifteen or twenty years before. To this pretension Rancon made resistance on the *identical* grounds on which the plaintiff predicates his present suit. Hence, it is necessary to examine the report of that case, and see what bearing it has upon the present controversy.

*Vide,* Thomas May vs. Norbert Rancon, 5 Ann. 424. The defendant, among others, made the following defences, viz:

" That the natural flow of the water along the line of the levee complained was in a direction parallel with it. That the levees or dams complained of have existed for more than fifteen years without any opposition from the plaintiff or his vendors, and that he has waived, by his silence, any rights he might have.

" That the said levees were not constructed with the intention of arresting the natural flow of the waters on plaintiff's land, but for the purpose of *counteracting* the effect of two wide draining canals now existing on his estate, which accumulate the water in large quantities, raise it above its level, and force it with great rapidity through his land. That those canals extend far beyond the cultivated lands of the plaintiff; that they change the natural course of the waters, and should not be permitted to continue open.

" That the *coulées* through which some of the water that falls on the plaintiff's land and finds its way on defendant's estate, are the result of crevasses, and cannot be considered natural drains "

That paragraph clearly shows that the issues in this case are identical, except in so far as the condition of things has been changed since the construction of Company canal.

That suit was tried by a jury who found for the defendant, and the plaintiff appealed. On the hearing in this Court the discovery was made that there had been improperly admitted, over the defendant's objection and exception, certain incompetent evidence, and, consequently, the verdict and judgment were set aside and the cause remanded.

As a means of solving the difficulty presented, the Court took occasion to recommend the parties to seek relief under the provisions of section 6 of the Act of March 25, 1813.

The pertinent provision of that act reads as follows, viz : " When a point of land on the Mississippi or other water course shall be divided among several proprietors (and), it shall be found necessary to dig one or more common draining ditches, the said (police) juries shall have the power to ordain that said ditches be dug *at the expense of said lots,* and that the expense be borne by a contribution among said owners, to be *levied* in such manner as the said juries shall respectively prescribe."

The Court then proceeded to say :

" Those powers are ample to meet the present case and to remove all the difficulties which are shown to exist in relation to draining the point of Bonnet Carré.

" We, therefore, earnestly recommend the parties to this suit to

avail themselves of the provisions of this law, and not to force us to make a decision which *may be injurious to both.* The police jury have the right to determine how lands *situated as these* are, shall be drained *without regard to their relative position,* and if any rational system of drainage be ordained by them, it shall be respected and enforced by us."

That decision was rendered in May, 1850, and it was in pursuance of this recommendation by the Court that the police jury ordained and established Company canal, as above described.

The decision, as well as the ordinances themselves, leave no doubt in our minds of the fact that both Glendale and Gold Mine plantations were specifically included in this plan or system of *artificial* drainage —not, possibly, as a part of Bonnet Carré (point, but as "adjacent lands" in like situation.

In so deciding, the Court only followed the precedent established in the case of Martin vs. Jett, 12 La. 501, and to which special reference is made as authority for their decision.

It has been followed by the case of Walsh vs. Arnous, 6 Ann. 97, in which the same recommendation was made by the Court.

In Avery vs. the Police Jury of Iberville, 12 Ann. 554, the Court upheld the constitutionality of the Act of 1813.

Neither the law nor the authority of the police jury has been questioned since, and it is manifest that the defendant and his authors acquiesced in the construction of Company canal—indeed, it is in proof that May paid at least one-half of the assessment made against Gold Mine by the police jury for the purpose of constructing it.

There was a clause in the Act of March 3, 1814, which is explanatory of section 6 of the Act of 1813, " saving to individuals or persons aggrieved the right of complaining for the making or opening of such natural or artificial drainings, when  *  *  hurtful to them, before any court of competent jurisdiction, as in case of a common civil action."

Under the evidence in the record, the defendant is estopped from gainsaying or disputing the existence of Company canal, or that Bayou Roussi forms a part of it. Her author bears quite as much of the responsibility for it, if not more, than any one else, because it was his suit against the former proprietor of Glendale that brought it into existence.

There is no sufficient evidence in the record to show any relinquishment or abandonment of this canal on the part of plaintiffs or their authors. On the contrary, the proof is that the rain and overflow

water from Bonnet Carré point passes through the upper portion of Company canal, but that same is *partially* obstructed in its flow through Bayou Roussi in its course to that portion of the canal below Gold Mine. Hence, the provisions of the Code relied upon by the defendant are not applicable. R. C. C. 815, *et seq.*

For like reason the servitude has not been extinguished by non-usage, and it is not prescribed. R. C. C. 789, 790.

Indeed, prescription could not run against the exercise of a right of servitude when the person pleading prescription has resisted and prevented its exercise, as defendant has done in this instance. R. C. C. 792.

The judge *a quo* held " that the servitude having been established under the police power of the parish authorities, the control of the common canal or ditch, known as the 'Company canal,' still remains in the police jury; that neither can the defendant prevent or oppose the digging or cleaning of any portion of the canal through which the servitude has been established, nor can the plaintiffs, or other individuals, go, at their pleasure, on defendant's land, without her consent, for the purpose of digging or improving the condition of the drainage canals, and that such improvements must be done by order of the police jury on such terms and in such manner as they may think proper."

These observations are eminently wise and correct, and should be enforced.

We are of the opinion that the system of *artificial* drainage, which was established by the police jury, was for the mutual benefit and advantage of the proprietors of estates on Bonnet Carré point and others adjacent thereto, including Glendale and Gold Mine, and that they are entitled to the full and complete exercise and enjoyment, but only through the parish authorities, as herein intimated.

But the record discloses that Company canal has never been so extended as to form a connection with " Bayou Pin " in the rear, as originally ordained by the police jury. We are of the opinion that it is but justice and equity to the defendant that it should be completed, and that the judgment should be amended in this respect.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be so amended as to require the police jury, in case they determine to enforce this decree, to cause, at the same time, the Company canal to be extended so as to form a connection with " Bayou Pin," and that, as thus amended, said judgment be affirmed.

It is further ordered that the costs of appeal be taxed against the plaintiff and appellees.

## On Application for Rehearing.

Poché, J.  Plaintiffs charge two serious errors to their detriment in our decree :

1.  They urge that having found the law and the facts in their favor, as declared in their pleadings, we should have granted them the relief which they had prayed for ; and that therefore we should have absolutely recognized their right to enter on defendant's lands for the purpose of cleaning and deepening the "Bonnet Carré Company Canal," or, in the alternative, the defendant should have been condemned to make those improvements herself.

Such was the purport of the prayer of their petition.  But the part of our decree complained of in this regard, was simply in affirmance of the judgment rendered by the district court, which subordinated the recognized right of plaintiffs to clean and deepen the canal to the action and control of the parish authorities.

Now, plaintiffs are appellees from that judgment, and they have not made a motion or prayer for an amendment of the same.  It is elementary, under the rules of our jurisprudence, that we are powerless to amend the judgment in their favor.  Hence that feature of the decree must remain undisturbed.

2.  They next complain of that part of our decree which amends the judgment appealed from so as to " require the police jury, in case they determine to enforce this decree, to cause, at the same time, the Company canal to be extended so far as to form a connection with " Bayou Pin."

A second examination of the whole case has led us to the conclusion that we had committed an error on that point, superinduced by an allegation in defendant's answer to the effect that said Company canal or " ditch was never completed or finished."

Our second consideration of the pleadings and of the evidence has satisfied us that that allegation formed no issue in the case ; no prayer was predicated thereon, and no contestation on the trial grew out therefrom.

The record does show that the canal contracted for by the police jury was contemplated to have been extended to *Bayou Pin*, and that this has never been done.  But, in point of fact, the only issues which were tendered by the pleadings, and which were tried and disposed of in the district court, were the contested right of plaintiffs to claim any legal title to, or protection and advantage from, the Company canal as dug and made under the authority of the police jury ; and the recon-

ventional demand of defendant to exercise her alleged right of natural servitude of drainage over plaintiffs' lands.

It appears to our satisfaction from the evidence that a proper dredging and cleaning of the "Company canal," including that portion of the same known as "Bayou Rousse," throughout its entire length as made under the contract with the police jury, would afford all the relief which plaintiffs claim and contemplate, without injurious effects to defendant's lands and drainage.

Hence we conclude that the judgment appealed from was as favorable to her as the nature of the case could admit of, and that she was entitled to no relief at our hands.

We therefore deem it our duty to re-open the case with the sole view of setting aside that portion of our decree which amended the judgment in favor of appellant. To that end we shall recast our decree in full.

It is therefore ordered that our previous decree herein be annulled and set aside, and it is now ordered that the judgment of the district court be affirmed at appellant's costs.

Rehearing refused.