■ The appellees, Victor S. Johnson and John G. Pundt, have applied for a rehearing, complaining, mainly, that the court has rendered a personal judgment for costs against Johnson who is a non-resident of the state and who has not been personally served within the jurisdiction of the court. The complaint is well-founded, since any judgment rendered against Johnson in this case can have no effect beyond his property which has been attached. Accordingly, our decree is amended so as to provide that the judgment for costs rendered against Victor S. Johnson shall have effect only against his property herein attached. With this amendment to our decree, the appellees' application for a rehearing is denied.

195 So. 518

**HIGHTOWER et al. v. MARITZKY et al.**

No. 35289.

March 4, 1940.

Rehearing Denied April 1, 1940.

W. D. Cotton, of Rayville, for plaintiffs-appellees.

Meadors & Gensler, T. H. McEachern, and Fred L. Jackson, all of Homer, and Goff, Goff & Caskey, of Arcadia, for defendants-appellants.

O'NIELL; Chief Justice.

The plaintiffs, owning a tract of land having an area of 200 acres, on which the defendants claim certain mineral rights, brought this suit to have the defendants' rights declared forfeited by the prescription of ten years, liberandi causa. The rights claimed by the defendants consist of a fourth interest in whatever oil, gas or other minerals may be produced from the 200 acres of land. The suit is founded upon articles 789, 3528, 3529, 3544, 3546 and 3549 of the Civil Code, and the jurisprudence on the subject, maintaining that such a right, owned by one who is not the owner of the land, is a real right, of the nature of a servitude upon the land, and therefore lapses by effect of the prescription of ten years, liberandi causa, if not exercised within that time. The defendants pleaded in their answer to the suit that, because of certain stipulations in the deed by which the plaintiffs' author in title sold the mineral rights to the defendants' author in title, the rights were not

subject to prescription, and that, for other reasons stated in the answer, the prescription was interrupted or suspended, if in fact the rights were ever subject to prescription. The judge, after hearing the evidence, gave judgment for the plaintiffs sustaining the plea of prescription and declaring the land free from the mineral rights claimed by the defendants. They are appealing from the decision.

■■■■ The plaintiffs acquired title to the 200 acres of land by inheritance from William T. Hightower, who died in 1927. The defendants acquired a fourth interest in the mineral rights in the land from Allen P. Findling, who bought from William T. Hightower on February 26, 1925, "One-fourth (¼) of all the oil, gas and other minerals on, in or under" the 200 acres of land. It is well settled, and is not disputed, that a deed purporting to convey the oil or gas in or under a tract of land conveys only the right to become the owner of whatever oil or gas may be found and reduced to possession. Such a right, being a real right, and of the character of a servitude on the land, is extinguished by the prescription of ten years, liberandi causa, if not exercised within that time. Rev.Civ.Code, arts. 789, 3528, 3529, 3544, 3546 and 3549. This prescription is applicable not only to one who owns all of the mineral rights in the land of another but also to one who has the right to only a fractional part of the minerals that may be produced, as, for example, a half or a fourth of the so-called mineral rights. Clark v. Tensas Delta Land Co., 172 La. 913, 136 So. 1; Myers v. Cooke, 175 La.

30, 142 So. 790; Gaines v. Crichton, 187 La. 345, 174 So. 666; Daggett on Mineral Rights in Louisiana, Sec. 23, p. 85.

■■■■ The reason for which the defendants contend that the mineral rights which Findling bought from Hightower on February 26, 1925, were not subject to the prescription of ten years, liberandi causa, is that it was stipulated in the deed that Findling or his assigns should not share in any rentals that might be paid thereafter to maintain in force an oil and gas lease on the land, or share in the price of any subsequent lease that might be placed upon the land; and that Hightower alone should have authority to lease the land, and to collect the bonus or rentals. The defendants argue that by these stipulations Findling appointed Hightower his agent to lease the land for the production of oil or gas, and to receive the price and rentals therefor. Hence they invoke the doctrine that one who holds possession of property as the agent for the owner cannot acquire title by prescription, or adverse possession. That doctrine has reference to prescription acquirendi causa, and is founded upon the fact that possession of property held by an agent for the benefit of the owner is not adverse possession. The doctrine has no application to this case,—not only because we are dealing now with prescription liberandi causa, but also because the stipulations referred to, in the deed from Hightower to Findling, did not purport to make Hightower the agent of Findling for the purpose of leasing the land for the production of oil or gas or other minerals. It has been decided that such stipu-

lations in a sale or reservation of the mineral rights in a tract of land do not constitute a mandate or power of attorney. Mt. Forest Fur Farms of America v. Cockrell, 179 La. 795, 155 So. 228. A case somewhat analogous is Childs v. Porter-Wadley Lumber Co., 190 La. 308, 182 So. 516. By the stipulations referred to, in the deed from Hightower to Findling, Findling merely consented that Hightower, being the owner of the land and having the right to three-fourths of whatever oil or gas might be produced from it, should have the exclusive right to grant mineral leases on the land and to collect any rental or bonus that might be due under the lease. But any lease that might have been granted by Hightower would have been granted not as agent for Findling but as owner of the land, notwithstanding it would have inured to the benefit of Findling, to the extent of his interest in the royalties, as an incident of his having the one-fourth mineral right in the land.

 The next plea urged in defense of this suit is that the stipulation in the deed from Hightower to Findling, that Hightower should have the exclusive right to lease the land for the production of oil or gas, established an obstacle in the way of Findling's exercising his real right on the land, and therefore, according to article 792 of the Civil Code, the prescription of ten years for nonuse was suspended as long as the obstacle remained. Although this article, by its terms, might seem applicable only to predial servitudes, the principle on which it is founded is applicable as well to personal servitudes as to predial servitudes. What is said in the article is that, if the owner of the estate to whom the servitude is due is prevented from using it by any obstacle which he can neither prevent nor remove, the prescription for nonuse does not run against him as long as the obstacle remains. In the phrase "to whom the servitude is due", the words "to whom" are a translation of the French word auquel, which might as well have been given the neuter gender,— to which,—in the translation. But the meaning is the same, whether we say "the owner to whom the servitude is due", or "the owner of the estate to which the servitude is due". The article has reference to those obstacles only which the owner of the servitude or real right has not consented to. Sarpy v. Hymel, 40 La. Ann. 425, 4 So. 439. The wording of the article leaves no doubt about that, in its reference to a person's being prevented from using his servitude. It is merely an embodiment of the maxim Contra non valentem, etc. In that connection, the plaintiffs urge another reason why this article of the Code is not applicable to an obstacle, or limitation or restriction, to which the grantee of a servitude gives his consent in the deed granting the servitude. The parties to a contract granting a servitude or real right may impose any restriction or limitation that they see fit to impose upon the use or enjoyment of the servitude or the exercise of the right, —except that they cannot stipulate effectually that the servitude or real right shall not be subject to the prescription of ten years, liberandi causa. The reason for

that exception to the freedom of contract is in the fundamental rule of public policy that a debtor, or an obligor in the case of a servitude or real right, cannot renounce in advance the benefit of the prescription which may release him or his land from the obligation. Rev.Civ.Code, arts. 3459, 3460, 3549; Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., on rehearing, 151 La. 361, 91 So. 765; Bodcaw Lumber Co. v. Magnolia Petroleum Co., 167 La. 847, 120 So. 389.

 The next plea of the defendants, being an alternative plea, is that, if their rights were subject to the prescription of ten years liberandi causa, the prescription was interrupted by an acknowledgment made by the plaintiffs in a deed by which they sold the 200 acres of land and three-eighths of the mineral rights to one S. G. Shaw, on November 27, 1928, and again in the sheriff's deed by which the plaintiffs repurchased the property, on November 19, 1932. In the deed from the plaintiffs to Shaw, immediately after the description of the 200 acres of land, this stipulation or acknowledgment appears: "It is especially agreed and understood by all of the parties hereto that at this time ¼ of all the minerals in and under the above described land has been sold, and that the vendors herein expressly reserve to themselves, their heirs and assigns, ½ of all the oil, gas and other minerals in and under the above described land that they now own in same, and this reservation is especially considered in fixing the price of this sale."

The purpose and effect of that stipulation was to recognize the right which the present defendants then had to a fourth of the mineral rights, and to reserve to the present plaintiffs three-eighths, or half of their three-fourths, of the mineral rights in the land. In the sale to Shaw the plaintiffs reserved a mortgage and vendor's lien to secure an unpaid part of the price, and when the mortgage was foreclosed and the plaintiffs repurchased the property, it was recognized in the sheriff's deed that Shaw had only a three-eighths mineral right. The recognition was made immediately following the description of the land, thus: "less and except five-eighths of the minerals underlying said land, heretofore sold and reserved by the plaintiffs." That meant that William T. Hightower had sold two-eighths of the mineral rights to Findling, and that the plaintiffs had reserved three-eighths from the sale to Shaw.

These acknowledgments by the plaintiffs, that their land was subject to the defendants' right to have a fourth of the oil, gas or other minerals that might be produced from the land, did not interrupt the prescription of ten years, liberandi causa. In order for an acknowledgment by a landowner that his land is subject to certain mineral rights in favor of a person named in the acknowledgment to have the effect of interrupting the prescription by which such rights are extinguished the intention that the acknowledgment shall have that effect must be expressed in unmistakable terms. Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., 151 La. 361, 91 So. 765; Sellington v. Producers' Oil Co., 152 La. 81, 92 So. 742; Lewis v. Bodcaw Lumber Co., 167

La. 1067, 120 So. 859; La Del Oil Properties v. Magnolia Petroleum Co., 169 La. 1137, 126 So. 684; Frost Lumber Industries v. Union Power Co., 182 La. 439, 162 So. 37; Goldsmith v. McCoy, 190 La. 320, 182 So. 519; Vincent v. Bullock, 192 La. 1, 187 So. 35; Daggett on Mineral Rights in Louisiana, Sec. 14, pp. 38–52.

■ The next plea urged by the defendants—being also an alternative plea—is that the term of prescription was extended by effect of two joint leases and pooling agreements made by the plaintiffs and the defendants, jointly with other landowners and owners of mineral interests, for a primary term extending beyond the expiration of the ten-year period of prescription. The plea is founded upon the decision in Mulhern v. Hayne, 171 La. 1003, 132 So. 659, that, if a landowner and the owner of mineral rights on the land join in a mineral lease for a primary term extending beyond the ten-year period of prescription of the mineral rights, the necessary effect is to extend the period of prescription. That decision was not based upon the idea that the landowner, by joining in the lease with the holder of the mineral rights as a co-lessor, acknowledged the rights of the co-lessor and thereby interrupted the prescription. On the contrary, it was explained in Bremer v. North Central Texas Oil Co., 185 La. 917, 171 So. 75, that the decision in the Mulhern case was based upon the proposition that it was impossible for the landowner and the holder of the mineral rights to make a joint mineral lease of the land for a term extending beyond the expiration of the period of pre-scription without intending thereby to extend the remaining period of prescription. If the plaintiffs in this case signed either of the joint leases with the defendants, and with the intention that they should be co-lessors, the plaintiffs thereby suspended or extended the remaining part of the ten-year period of prescription beyond the date on which this suit was filed. But the fact is that neither of the leases was signed by the defendants at the time when the plaintiffs signed them; and they—the plaintiffs—eight in number—all testified on the trial of the case that there was an agreement between them and the lessee, at the time when they signed the leases, that the holders of the one-fourth mineral interest—now the defendants in this suit—would not be allowed to sign the instruments. The plaintiffs in their testimony gave a plausible reason for insisting that the lessee should not allow the holders of the one-fourth mineral interest in the land to sign the instruments which they, the plaintiffs, were signing. The names of the holders of the one-fourth mineral interest—defendants in this suit—were written in the instrument among the names of the many lessors; and the plaintiffs, knowing that there remained less than two years of the period of prescription, were advised against signing a joint lease with the holders of the one-fourth mineral interest. The lessee and a man who signed the leases as a witness both testified that they had no recollection of any verbal agreement between the present plaintiffs and the lessee that the holders of the one-fourth mineral interest should not be allowed to sign the

instrument. But that testimony—particularly that of the lessee—amounts to little more than an absence of recollection on the subject. In one of the leases, which embraced 160 acres of the plaintiffs' 200 acres of land, there were 44 parties named as lessors, each having a fractional part of the land leased, or of the mineral interests; and in the other lease, which embraced 40 acres of the plaintiffs' 200 acres of land, there were 35 parties named as lessors, each having a fractional part of the land leased, or of the mineral interests. It is not unlikely, therefore, that the lessee and the other witness for the defendants should have forgotten the circumstances in which any one of the many lessors signed the instrument. Neither is it unreasonable to believe that the lessee would have consented to have the holders of this one-fourth mineral interest in 200 acres of the land leased sign another instrument, ratifying the leases as far as their interest was concerned, instead of signing the same instruments that the present plaintiffs signed. It is admitted that the defendants had not signed either of the leases when the plaintiffs signed them. Hence it is admitted in the brief for the defendants that, according to the ruling in Kennedy v. Pelican Tool & Supply Co., 188 La. 811, 178 So. 359, and in English v. Blackman, 189 La. 255, 179 So. 306, parol evidence was admissible to prove that there was a verbal agreement between the present plaintiffs and the lessee, at the time when they signed the leases, that the holders of the one-fourth mineral interest in the plaintiffs' land would not be allowed to sign the instruments. In both of the cases cited it was held that, where a landowner signed a mineral lease without knowing that the holder of an outstanding mineral interest in the land would join in the lease as a co-lessor, the instrument did not have the effect of suspending or extending the period of prescription that was running against the outstanding mineral interest, even though the holder of the outstanding mineral interest did afterwards sign the lease as a co-lessor. The judge of the district court, in this case, found that the evidence sustained the contention of the plaintiffs that they did not know, when they signed the leases and pooling agreements, that the parties who are the defendants in this suit would join in the leases as co-lessors. We concur in the judge's conclusion on the subject.

The next and last defense urged against the plea of prescription is that, at the time when William T. Hightower sold the one-fourth mineral interest to Allen P. Findling,—on February 26, 1925,—Hightower's wife had died, and her heirs, who are the plaintiffs in this suit, had inherited her half interest in the 200 acres of land, which had belonged to the matrimonial community. Hence it is contended that the right to exercise the servitude or mineral right which Hightower sold to Findling was suspended until the heirs of the deceased wife of Hightower, as co-owners of the land, ratified the granting of the servitude or mineral rights. The ratification is said to have taken place when the heirs of Hightower and of his wife recognized the outstanding one-fourth interest in the mineral rights, in selling the land to S. G. Shaw, on November 27,

1928,—which was less than ten years before this suit was filed,—and again in repurchasing the land at the sheriff's sale, on November 19, 1932. This plea is founded upon article 738 of the Civil Code, in which it is declared that, if an owner of an undivided interest in a tract of land grants a servitude upon the land, the contract is not null, but the exercise of the right to the servitude is suspended until the consent of the co-proprietor is given. We must bear in mind that it is not declared that the prescription by which the right to the servitude may be forfeited is suspended until the consent of the co-proprietor is given. What is said is that the right itself, to exercise or use the servitude, is suspended until the consent of the co-proprietor is given. In that sense the case is one in which there is an obstacle preventing the grantee from using the servitude; hence, in order to determine whether the period of prescription is thereby suspended, we must refer to article 792 of the Civil Code. There we find that the only kind of obstacle preventing the use of a servitude that can have the effect of suspending the running of prescription for nonuse is an obstacle which the person claiming the servitude "can neither prevent nor remove." The obstacle that prevents the exercise of the right of servitude in the situation contemplated in article 738 of the Civil Code,—where the servitude is granted by one or more but not by all of the co-proprietors of an estate,—is not an obstacle which the grantee of the servitude "can neither prevent nor remove." He can remove the obstacle at any time by suing for a partition of the estate, and by determining and locating thus the area on which the servitude may be exercised. Rev.Civ. Code, art. 740. If the partition has to be made by licitation, and if the co-proprietor who granted the servitude buys the estate at the auction sale, the whole estate becomes subject to the servitude; otherwise the servitude is extinguished and the grantor must return the price. Rev.Civ. Code, art. 741. These provisions in the Civil Code leave no doubt that, when one who owns only an undivided interest in an estate grants a servitude on the estate, it is only the right to use the servitude,— and not the prescription by which the right may be forfeited for nonuse,—that is suspended until the consent of the co-proprietor or co-proprietors is given,—or until the grantee avails himself of his right to provoke a partition of the estate.

Inasmuch as William T. Hightower had title for a half interest in the 200 acres of land, with the same interest in the mineral rights in the land, at the time when he sold a fourth interest in the mineral rights to Allen P. Findling, the sale was valid; but, in so far as the sale gave Findling the right to go upon the land and explore for oil and gas, or other minerals, the sale was governed by articles 738, 740, 741, and 792 of the Civil Code, relating to servitudes. There is nothing contrary to this opinion in Superior Oil Producing Co. v. Leckelt, 189 La. 972, 181 So. 462, or in the companion case having the same title, 189 La. 990, 181 So. 468, cited by the appellants.

The judgment is affirmed.