206 So.2d 551 (1967)
Herman J. LeBLEU et al., Plaintiffs-Appellants,
v.
LeRoy LeBLEU, Defendant-Appellee.
No. 2144.
Court of Appeal of Louisiana, Third Circuit.
January 29, 1967.
*552 Plaisance & Franques, Mouton, Beard, by Caliste Beard, Jr., Lafayette, for plaintiffs-appellants.
Aaron & Aaron, by J. Donald Aaron, Crowley, for defendant-appellee.
Before FRUGÉ, SAVOY and HOOD, JJ.
HOOD, Judge.
This is an action for specific performance of a contract under the terms of which defendant obligated himself to convey to plaintiffs certain mineral rights in a tract of land in Acadia Parish, and for an accounting of the mineral lease bonuses and rentals allegedly received by defendant from that property since August 20, 1962. Alternatively, plaintiffs demand an accounting of and judgment for 3/56ths of the lease bonuses and rentals received by defendant from February 20, 1957, to August 20, 1962. And, as a second alternative demand, plaintiffs pray for judgment decreeing that the prescription of ten years which otherwise would have extinguished a mineral interest previously acquired by them was interrupted on February 20, 1957.
The suit was instituted by Herman J. LeBleu, Paul Vance LeBleu and Mrs. Marjorie Lee LeBleu Arceneaux. It was filed originally against LeRoy LeBleu, but by a supplemental petition filed later Mary Hilda LeBleu and Joseph Ray LeBleu also were joined as party defendants, plaintiff alleging that they were indispensible parties.
Defendant, LeRoy LeBleu, filed an exception of no cause of action to plaintiffs' principal demands, an exception of prescription of ten years to plaintiffs' second alternate demand, and an answer. The trial judge sustained the exception of no cause of action as to the principal demands, and he sustained the exception of prescription as to the second alternate demand.
The case was tried on the merits as to the first alternate demand, and judgment was rendered by the trial judge in favor of plaintiffs and against defendant, LeRoy LeBleu, for $857.31. Plaintiffs have appealed.
There is no dispute as to the facts. Prior to August 20, 1952, Justilien LeBleu, an ancestor of plaintiffs, owned a 156-acre tract of land in Acadia Parish, Louisiana. On that date he conveyed to defendant, LeRoy LeBleu, the fee title to that tract of land, but he reserved to himself one-half of all of the minerals in, under and to be produced from that property. Justilian LeBleu died testate on November 3, 1956, and upon his death plaintiffs received *553 a bequest of 3/8ths of the one-half mineral interest which the testator had reserved from the above mentioned sale of August 20, 1952. The testator's widow, Mrs. Lela Higginbotham LeBleu, and the defendants, Mary Hilda LeBleu and Joseph Ray LeBleu, also were bequeathed additional interests in the minerals affecting said property.
On or about February 20, 1957, the plaintiffs, together with Mrs. Lela Higginbotham LeBleu, Mary Hilda LeBleu and Joseph Ray LeBleu, entered into an agreement with defendant, LeRoy LeBleu, relating to the above mentioned tract of land. Pursuant to that agreement three documents were executed by the parties, all of which were executed and completed on February 20, 1957. These documents are described as follows:
(1) The plaintiffs, joined by Mrs. Lela Higginbotham LeBleu, Mary Hilda LeBleu and Joseph Ray LeBleu, executed a power of attorney appointing defendant, LeRoy LeBleu, as their agent, and granting unto him the power and authority to grant mineral leases for and in their behalf affecting and relating to this 156-acre tract of land.
(2) On the same day, plaintiffs and the other three persons who had joined them in executing the above described power of attorney, also executed an act of sale conveying to defendant, LeRoy LeBleu, 3/56ths of the oil and gas and minerals in and under and that may be produced from this tract of land. The act recites that the conveyance was for a consideration of $100.00 in cash, "and other good and valuable consideration."
(3) Also on the same date defendant LeRoy LeBleu executed an authentic act which recites that in consideration of the power of attorney and conveyance to him of a 3/56ths mineral interest in the property, he obligates himself to convey to the grantors in those instruments a one-fourth mineral interest in the land on August 20, 1962, in the event the remaining mineral interest of said parties expires by prescription of ten years on that date.
In the last described document, the defendant LeRoy LeBleu states that the six persons who executed the power of attorney and mineral right sale to him had acquired their mineral interest in the property from Justilien LeBleu, deceased, and that "unless there is a user of the said mineral interest of Grantors on or before August 20, 1962, the same will expire by virtue of the running of the prescription of ten (10) years." He formally acknowledged that plaintiffs, and the three others hereinabove named, had granted him an irrevocable power of attorney to lease the property and had conveyed to him a 3/56ths mineral interest in said land, and after reciting these facts, the document provides:
"In consideration of the above mentioned irrevocable power of attorney and the transfer of the said 3/56th mineral interest, appearer has bound and obligated himself and does hereby bind and obligate himself, in the event the remaining interest of grantors expires on August 20, 1962, by virtue of the running of the prescription of 10 years, to convey to grantors, in equal proportions, an undivided one-fourth (¼th) mineral interest affecting the said above described land."
"It is distinctly and expressly understood, however, that if said remaining mineral interest of Grantors shall still be in force on August 20, 1962, the obligation of appearer to convey to grantors said ¼th mineral interest affecting said land shall terminate and he shall not be obligated to convey to grantors any mineral interest whatsoever in said land." (Emphasis added.)
No use of the mineral estate was made prior to August 20, 1962, and plaintiffs contend that they now are entitled to judgment ordering the specific performance of *554 the above quoted provisions of the last described document.
Mrs. Lela Higginbotham LeBleu died intestate some time after the above described documents were executed, and plaintiffs inherited an additional mineral interest from her. They allege that immediately after the 12/56ths mineral interest was conveyed to defendant LeRoy LeBleu, they were left with a remaining in interest of 12/56ths of all of the minerals in, under and to be produced from said property. They also contend that their proportionate share of the one-fourth mineral interest which defendant LeRoy LeBleu obligated himself to convey to the persons named in the last described document amounts to 12/56ths of all of the minerals in said property, and they demand judgment ordering said defendant to execute and deliver to them, by authentic act, that interest in the minerals, or in default thereof that the judgment operate as a transfer of such mineral rights.
The trial judge, in sustaining the exception of no cause of action which defendant filed to the principal demands of plaintiffs, held that "one cannot renounce prescription not yet acquired," and that "this was an attempt to do what public policy and express law prohibits and therefore cannot be legally enforced." As the basis for that ruling he relied largely on LSA-C.C. art. 3460, and on the cases of Bodcaw Lumber Co. of Louisiana v. Magnolia Petroleum Co., 167 La. 847, 120 So. 389 (1929); and Hightower v. Maritzky, 194 La. 998, 195 So. 518 (1940).
The mineral interest which Justilien LeBleu reserved to himself in the deed executed on August 20, 1952, was a real right, of the character of a servitude on the land, which was subject to being extinguished by prescription of ten years, liberandi causa, if not acknowledged or exercised within ten years after the date on which it was reserved. LSA-C.C. arts. 789, 3528, 3529, 3544, 3546 and 3549; Hightower v. Maritzky, supra; Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207 (1922); Patton's Heirs v. Moseley, 186 La. 1088, 173 So. 772 (1937); Scott v. Hunt Oil Co., 160 So.2d 433 (La.App.2d Cir.1964, writ refused).
Plaintiffs, upon receiving a bequest of a portion of these mineral rights from Justilien LeBleu, acquired no greater rights than those which were owned by the testator. The mineral rights which plaintiffs acquired, therefore, expired or were terminated by prescription on August 20, 1962, unless the record shows that the running of prescription was interrupted by use of the servitude or by acknowledgement during the preceding ten year period. We have already noted that the mineral rights were not exercised within that time.
The parties to a contract in which a mineral servitude is either granted or reserved may stipulate that the servitude will expire or terminate within a period of less than ten years, but they cannot stipulate effectively that it will continue or remain in effect without use for a period of more than ten years. A provision in any such contract to the effect that the mineral servitude will not be subject to the prescription of ten years, liberandi causa, or that it will continue in effect for a period of more than ten years without use, is unenforceable. This firmly established rule is based on public policy, it being the public policy of this state that a debtor, or an obligor in the case of a mineral servitude, will not be permitted to renounce in advance the benefit of the prescription which may release him or his land from the obligation. LSA-C.C. art. 3460; Hightower v. Maritzky, supra; Bodcaw Lumber Co. of Louisiana v. Magnolia Petroleum Co., supra; Lewis v. Bodcaw, 167 La. 1067, 120 So. 859 (1929); Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., 151 La. 361, 91 So. 765 (1922); Munn v. Wadley, 192 La. 874, 189 So. 561 (1939); Gueno v. Medlenka, 238 La. 1081, 117 So.2d 817 (1960).
*555 In Hightower v. Maritzky, supra, our Supreme Court said:
"* * * The parties to a contract granting a servitude or real right may impose any restriction or limitation that they see fit to impose upon the use or enjoyment of the servitude or the exercise of the right,except that they cannot stipulate effectually that the servitude or real right shall not be subject to the prescription of ten years, liberandi causa. The reason for that exception to the freedom of contract is in the fundamental rule of public policy that a debtor, or an obligor in the case of a servitude or real right, cannot renounce in advance the benefit of the prescription which may release him or his land from the obligation * * *"
And, in Gueno v. Medlenka, supra, the same court held:
"In this connection, it is to be borne in mind that it is contrary to the public policy of this State to hold property out of commerce and this Court has consistently applied the liberative prescription of ten years in dealing with the exercise of mineral rights. * * *"
A number of schemes or devices have been employed from time to time in attempts to circumvent the established public policy of this state that the prescription of ten years which applies to mineral servitudes cannot be waived or renounced in advance or before the prescription has accrued. The appellate courts of this state, however, have consistently refused to enforce agreements which were found to be schemes or devices to circumvent or avoid this public policy. See Childs v. Porter-Wadley Lumber Co., 190 La. 308, 182 So. 516 (1938); Patton's Heirs v. Moseley, supra; Roy O. Martin Lumber Co. v. Hodge-Hunt Lumber Co., 190 La. 84, 181 So. 865 (1938); Ober v. McGinty, 66 So.2d 385 (La.App.2d Cir.1953); Hicks v. Clark, 225 La. 133, 72 So.2d 322 (1954); Union Producing Co. v. Parkes, 40 F.Supp. 163 (W.D.La.1940).
In Ober v. McGinty, supra, the plaintiff sold land to the defendant, reserving to the seller one-half the minerals for ten years and the right to extend the reserved mineral interest for an additional period of ten years upon payment of a stipulated price per acre. Our brothers of the Second Circuit Court of Appeal held, correctly we think, that that portion of the agreement which provided for the extension of the servitude beyond the original ten year period was void and unenforceable, as being an attempt to circumvent the public policy of this state. The court said:
"* * * It is obvious that Ober had in mind at the time he made the sale, avoidance of or escape from the effects of the law of prescription as applied to mineral servitudes, and this is clearly an effort to establish a servitude for a longer period than ten years. * * *"
The case of Bodcaw Lumber Co. of Louisiana v. Magnolia Petroleum Co., supra, involved the sale of a tract of land in which the seller purported to reserve to himself the mineral rights in said property for fifteen years. The court held that an obligor could not renounce the benefit or prescription, liberandi causa, in advance, and that the mineral servitude so reserved was subject to prescription of ten years in spite of the stipulation in the reservation.
We are aware of the cases of Ober v. Williams, 213 La. 568, 35 So.2d 219 (1948), and Chicago Mill & Lumber Company v. Ayer Timber Company, 131 So.2d 635 (La.App.2d Cir.1961), in which the courts upheld and enforced agreements which had been challenged as being contrary to public policy in that they extended mineral servitudes beyond the ten year prescription period. We readily distinguish those cases from the instant suit because of material differences in the facts. But even in those suits the court in each instance recognized that a scheme or device to circumvent the public policy of this state would not be tolerated.
*556 In Ober v. Williams, supra, for instance a contract to sell a tract of land was entered into on November 12, 1934, and it provided that the sale would be completed on November 12, 1935, if the vendor during that period of one year cleared off 15 acres of land and built a house on the property. The contract stipulated that upon completion of the sale the vendor was to reserve one-half of the minerals. The purchaser complied with the conditions of the sale and a deed was executed and delivered to him on December 12, 1935, the seller reserving one-half the minerals. Drilling operations were begun on about December 9, 1945, and immediately thereafter the new landowner sued contending that the mineral servitude reserved by the original seller had been extinguished by prescription on November 12, 1944, rather than ten years after the actual execution of the deed. Our Supreme Court affirmed the judgment of the trial court which held that the ten year prescriptive period began to run on the date the deed was executed. In answer to arguments that this constituted a scheme or device to circumvent public policy, the court said:
"Our answer to the alarms of counsel is that it will be time enough to deal with situations involving fraudulent evasions of our laws and public policy when and if occasion arises. Surely, no one will have the temerity to suggest unlawful scheming on the part of the defendants in the present case. * * *" (Emphasis added.)
In Chicago Mill & Lumber Company v. Ayer Timber Company, supra, the defendant landowner executed several five year leases affecting tracts of land owned by it, and in each lease it granted to the lessee an option to buy the land at a stipulated price at the end of the five year period, the seller to reserve all of the minerals. The lessees exercised this option at the end of the five year leases. The mineral servitude which had been reserved by the original landowner was exercised more than ten years after the lease and option agreements were signed, but less than ten years after the deed containing the mineral reservations had been completed. The issue presented in the suit was whether the ten year prescription applicable to the minerals began to run on the date of each lease or on the date each deed was executed. The court held that prescription began to run on the date each deed was executed. The court specifically noted, however, that:
"The public policy, as relates to the prescription of nonuser as applied to mineral servitudes, is directed against attempts to renounce prescription in advance, or to suspend or to interrupt prescription by means other than user or other means expressly recognized by law, such as acknowledgements made specifically for the purpose and with the intention of interrupting the running of prescription. What the courts have considered as contrary to public policy are agreements which seek to cause the lands to be burdened with mineral servitudes for more than 10 years without user. * * *" (Emphasis added.)
"Moreover, as to the mineral lessees of Ayer Timber Company, Inc., and their assigns, the record makes it abundantly clear, and it is not contended, they were in any way implicated in any scheme or device to circumvent the public policy of this State relative to the 10-year liberative prescription applicable to mineral servitudes."
The instant suit, unlike either of the two cases which have just been discussed, involves neither a contract to buy and sell land nor an option to buy real property, and for that reason the two cited cases are not applicable here.
Plaintiffs contend that in the agreement which was entered into by the parties on February 20, 1957, the defendant merely obligated himself "to convey a new mineral interest if the one then running prescribes from non-use." They point out that the obligation to convey this mineral interest is subject to a suspensive condition, the condition *557 being that the existing mineral servitude shall become extinguished by prescription on August 20, 1962, and they argue that such a contract is valid and enforceable under LSA-C.C. arts. 2021 and 2028. They deny that the agreement between the parties or the contracts which were executed on February 20, 1957, constitute an attempt by defendant to renounce prescription before it had accrued.
We are unable to agree with plaintiffs in that argument. We think the parties to this suit, in entering into the agreement which is evidenced by the three written documents hereinabove described, intended to vest plaintiffs with a mineral servitude extending over a period of at least 15 years from and after the date on which the contracts were entered into. In our opinion this constitutes a scheme or a device to circumvent or avoid the law and public policy of this state that a mineral servitude will be subject to the prescription of ten years, that contracts which purport to extend such a servitude for a longer period of time without use will not be enforced, and that a party cannot waive or renounce the prescription applicable to a mineral servitude before it has accrued.
The issue being considered here is similar to that which was presented in Ober v. McGinty, supra. For the reasons assigned in that case we concur in that judgment of the trial court insofar as it maintains the exception of no cause of action filed to plaintiffs' principal demands. That part of the judgment of the trial court which maintains the exception of no cause of action to the principal demands of plaintiffs, therefore, will be affirmed.
In their second alternative demand, plaintiffs seek a judgment decreeing that the prescription of ten years, which otherwise would have extinguished their mineral servitude in 1962, was interrupted on February 20, 1957, when the parties entered into and executed the three written contracts, hereinabove described, relating to said mineral rights.
The trial judge maintained the exception of prescription which was filed to this second alternative demand, assigning as reasons therefor that the agreements entered into on February 20, 1957, were not sufficient to constitute a renunciation of the prescription which had accrued up to that time and thus that the running of prescription was not interrupted.
The settled rule is that no act on the part of a landowner will have the effect of interrupting prescription and extending the life of a mineral interest unless it is shown that there was a clear intention on the part of the landowner to achieve that result. Barnsdall Oil Co. v. Miller, 224 La. 216, 69 So.2d 21 (1953); Union Oil Co. of California v. Touchet, 229 La. 316, 86 So.2d 50 (1956); Elkins v. Roseberry, 233 La. 59, 96 So.2d 41 (1957); Achee v. Caillouet, 197 La. 313, 1 So.2d 530 (1941); Williams v. Arkansas Louisiana Gas Co., 193 So.2d 78 (La.App.2d Cir. 1966).
We agree with the trial court that in the instant suit the agreement which was entered into by the parties on or about February 20, 1957, and the documents which were executed by them on that date, are not sufficient to show in clear and unmistakable terms that the defendant intended to interrupt the running of prescription on the mineral servitude at that time or that he intended to waive or renounce the prescription which had accrued. We find no error in that part of the judgment appealed from, therefore, which maintains the exception of prescription to plaintiffs' second alternate demand.
Plaintiffs are not seeking on this appeal to have the judgment of the trial court amended insofar as it relates to their first alternate demand. Defendants have not appealed, and no answer has been filed to the appeal which was taken by plaintiffs. Since no issue has been raised as to the correctness of the award of $857.31 made to plaintiffs in response to their first alternate *558 demand, we will affirm that portion of the judgment appealed from.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.