George M. **AGURS**

v.

**AMOCO PRODUCTION COMPANY.**

Civ. A. No. 781358.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Feb. 16, 1979.

---

Horace M. Holder, Tucker, Martin, Holder, Jeter & Jackson, Shreveport, La., for plaintiff.

Clyde M. Thurmon, Randall S. Davidson, W. Michael Adams, Kay Cowden Medlin, Blanchard, Walker, O'Quin & Roberts, Shreveport, La., for defendant; Percy M. Sandel, Robert C. Smith, A. Ray Fontenot, Amoco Production Company, New Orleans Region, New Orleans, La., of counsel.

### RULING ON MOTION

DAWKINS, Senior District Judge.

This is a market value royalty suit which now is before us on defendant's motion for partial dismissal. After a hearing on January 18, 1979, the motion was taken under advisement and the parties were ordered to submit supplemental memoranda. After careful consideration of the record, briefs, and arguments of counsel, we grant in part and deny in part defendant's motion.

### FACTS AND BACKGROUND

On June 12, 1945, plaintiff George M. Agurs [1] executed an oil, gas, and mineral lease in favor of A. G. Birdwell, the prede-

---

1. While this matter was under advisement, we received a Rule 25(a)(1) suggestion of death of the plaintiff, George M. Agurs. We proceed to rule under the assumption that the proper parties will be substituted as plaintiff(s) within the applicable delays.

cessor in title of defendant Amoco Production Company, on a section of land in Caddo Parish, Louisiana. Agurs reserved a ⅛ royalty interest. The lease, with a primary term of ten years, has been maintained by production.

In 1962, Agurs brought suit against the owner of the lease at the time, Pan American Petroleum Company, to cancel it. Prior to judgment, the suit was compromised. The settlement agreement released some property covered by the 1945 lease but ratified the lease as to other portions of the property. In addition, a 1/16 "overriding royalty" was stipulated in favor of 27 people. Agurs' portion of this royalty is 13/16 of ⅔. The agreement negatively identified Agurs and four others as persons who had the right to lease the premises and to receive bonuses and rentals; the other recipients of the stipulated royalty, according to the agreement, have no right to lease the premises or to receive bonuses or rentals.

The gas produced from the area covered by the lease is "interstate gas" and the price therefore is regulated. Royalties have been paid upon the basis of the regulated price.

On July 18, 1978, plaintiff's counsel wrote a letter to defendant, pursuant to La.R.S. 31:137, et seq.,[2] demanding that royalties be paid on the basis of market or intrinsic value rather than the regulated price. Amoco responded by letter dated August 15, 1978, stating that it received plaintiff's letter on July 31, 1978, and would reply in the near future. By letter of September 8, 1978, Amoco informed plaintiff that further review was necessary. With no relief forthcoming, plaintiff then filed this suit in state district court on October 5, 1978. Defendant removed the case here on October 20, 1978.

Plaintiff has prayed for royalties computed on the basis of market or intrinsic value beginning from July 18, 1968 (ten years prior to the demand letter). Plaintiff also demands double damages under R.S. 31:140, interest, attorney's fees, and partial cancellation of the lease.

On November 17, 1978, defendant filed its motion to dismiss all claims prior to October 5, 1968. The motion is based on Louisiana

2. § 137. Nonpayment of royalties; notice prerequisite to judicial demand

If a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease.

§ 138. Required response of lessee to notice

The lessee shall have thirty days after receipt of the required notice within which to pay the royalties due or respond by stating in writing a reasonable cause for nonpayment. The payment or nonpayment of the royalties or stating or failing to state a reasonable cause for nonpayment within this period has the following effect on the remedies of dissolution and damages.

§ 139. Effect of payment in response to notice

If the lessee pays the royalties due in response to the required notice, the remedy of dissolution shall be unavailable unless it be found that the original failure to pay was fraudulent. The court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee, provided the original failure to pay royalties was either fraudulent or willful and without reasonable grounds. In all other cases, such as mere oversight or neglect, damages shall be limited to interest on the royalties computed from the date due, and a reasonable attorney's fee if such interest is not paid within thirty days of written demand therefor.

§ 140. Effect of nonpayment in response to notice or failure to state cause therefor

If the lessee fails to pay royalties due or fails to inform the lessor of a reasonable cause for failure to pay in response to the required notice, the court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee regardless of the cause for the original failure to pay royalties. The court may also dissolve the lease in its discretion.

§ 141. Dissolution not a favored remedy

In a case where notice of failure to pay royalties is required, dissolution should be granted only if the conduct of the lessee, either in failing to pay originally or in failing to pay in response to the required notice, is such that the remedy of damages is inadequate to do justice.

§ 142. Dissolution may be partial or entire

A mineral lease may be dissolved partially or in its entirety. A decree of partial dissolution may be made applicable to a specified portion of land, to a particular stratum or strata, or to a particular mineral or minerals.

Civil Code Article 3538,[3] which provides, in part, that actions for arrearages of rent[4] are prescribed by three years liberative prescription and that prescription is interrupted only by acknowledgment or commencement of suit.

Agurs acknowledges, correctly, that the three-year prescription is applicable to the royalty reserved in the 1945 lease.[5] He also acknowledges that prescription was not interrupted until the suit was filed. However, he vehemently objects to application of the three-year prescription to the "overriding royalty" stipulated in the 1962 agreement, and he further contends that prescription was suspended for the thirty days during which he was unable to file suit because of the provisions of R.S. 31:138.

The issues thus presented are whether the overriding royalty should be considered "rental" for the purposes of Civil Code Article 3538 and whether the thirty-day delay under R.S. 31:138 suspends prescription. We first consider the latter issue.

### SUSPENSION OF PRESCRIPTION

■ Article 138 of the Mineral Code (R.S. 31:138) provides in part,

The lessee shall have thirty days after receipt of the required notice within which to pay the royalties due or to respond by stating in writing a reasonable cause for nonpayment. . . .

The mandatory language of Article 138 indicates to us that the lessor should not be able to bring suit during the thirty-day period. Unable, therefore, to file suit during this period, lessor is entitled to take advantage of the rule that prescription does not run against one unable to act (*contra non valentem agere, non currit praescrip-*

to). The effect, in this instance, is that the running of prescription was suspended during the thirty-day period.

Defendant does not contest the application of the *contra non valentem* doctrine to the thirty-day period but contends that unless suit is filed on the thirty-first day the advantage is lost. No authority is cited for this unorthodox position, and we agree with plaintiff that the contention is without merit.

### PRESCRIPTION ON THE 1962 ROYALTY

At the outset, it should be noted that the new Mineral Code does not control the question at bar. In fact, until the last brief was received, no one contended that it was applicable. Accordingly, we do not decide whether the result we reach would be the same were the applicable provisions of the Code applied to the facts before us.

■ Defendant advances several arguments in support of its position that three-year prescription applies to the 1962 royalty. First, it argues that the case of *Wurzlow v. Placid Oil Company*, 279 So.2d 749 (La.App. 1st Cir. 1973), requires us to apply the three-year prescription. *Wurzlow* stands for the proposition that an overriding royalty created in favor of a non-lessor will be considered a personal obligation subject to a ten-year prescription. The court, in distinguishing cases which hold that a royalty reserved by the lessor was subject to the three-year prescription, relied on the absence of a lessor/lessee relationship in the facts before it. However, the court also relied on the factual difference between the creation of an override and the reservation of a royalty in the original lease.

---

3. Art. 3538. The following actions are prescribed by three years:

   That for arrearages of rent charge, annuities and alimony, or of the hire of movables and immovables.

   \* \* \*

   That for payment of money lent.

   \* \* \*

   This prescription only ceases from the time there has been an account acknowledged in writing, a note or bond given, or an action

commenced. *(As amended by Acts 1888, No. 78.)*

4. Louisiana jurisprudence interpreting Article 3538 clearly holds that it is applicable to royalties reserved by the lessor in a mineral lease. *Board of Commissioners v. Pure Oil Co.*, 167 La. 801, 120 So. 373 (1928); *Parker v. Ohio Oil Co.*, 191 La. 896, 186 So. 604 (1939).

5. See cases cited in footnote 4, *supra.*

*Wurzlow* does not control the facts here. It only establishes that a lessor/lessee relationship is a necessary prerequisite to classifying an override as rental. It does not follow that an override created in favor of a lessor always will be treated as rental. In other words, the lessor/lessee relationship is a necessary, but not sufficient, criterion for determining whether an override will be treated as rental.

■ Defendant next contends that the language of the 1962 agreement, combined with a consideration of the nature of the suit compromised, compels the conclusion that the override is rental. The pertinent portion of the agreement provides,

The said overriding royalty interest . . . shall be paid or delivered to the transferees aforesaid, free of any cost of development or operations (except applicable taxes, including severance taxes, production taxes, and gathering taxes), *in the same manner and subject to the same provisions* as provided for the payment of lessors' royalty under the oil, gas and mineral lease hereinabove described [the 1945 lease], and *shall be in addition to* the lessors' royalty initially stipulated in said lease, as to which Pan American's [Amoco's] obligation under said lease is not to be affected hereby as respects the interests expressly reserved by it herein.

The rights conveyed to the transferees are limited to the right to receive the stipulated proportions of production from Pan American's [Amoco's] reserved lease interests and Pan American [Amoco] shall have full right to deal with its reserved interests in every manner, including the release thereof, without the joinder of said transferees. [Emphasis supplied.]

The compromise agreement arose out of a suit to cancel the 1945 lease. Defendant maintains that the royalty in the 1962 agreement must be considered rental since it was given in consideration for avoiding cancellation of the lease. While, at first blush, this argument sounds plausible, there are other possible reasons for the royalty which would not lead to the conclusion that it should be considered rental. For example, the royalty could have been given simply to avoid the litigation, regardless of the merits of plaintiff's case. In any case, it is clear that the nature of the suit compromised does not control the nature of the royalty stipulated.

■ The agreement to pay the royalty "in the same manner and subject to the same provisions as provided for the payment of lessors' royalty" does not put the 1962 royalty into the same category as the 1945 royalty. The same may be said of the agreement that the 1962 royalty "shall be in addition to the lessor's royalty." For the former, we agree with plaintiff's contention that the phrase governs the method or manner of payment rather than the nature or classification of the payment. For the latter, the phrase is at best ambiguous and certainly not conclusive.

■ Contrary to defendant's assertions, and taking the instrument as a whole, we are convinced that the royalty stipulated is an overriding royalty, not rental royalty. First, we are persuaded by the use of the term "overriding royalty" throughout the 1962 agreement. The parties to the agreement are experienced oil men and must have had knowledge of the denotation and connotations of the phrase. Had the parties intended that the stipulated royalty be treated as rental, it would have been easy enough to so provide.

Moreover, we note that only five of the twenty-seven recipients of the 1962 royalty are lessors. Yet the instrument does not distinguish the nature of the payments to be made to the lessors and the twenty-two non-lessors; on the contrary, all royalties to all parties are called "overriding royalties." To distinguish the parties now and classify the royalties on the basis of the status of the recipient would be to read more into the agreement than is present. *Wurzlow, supra*, is the only authority cited which might authorize us to make such a classification, but, as we have discussed, the status of the recipient is only a necessary, not a sufficient, criterion for determining the nature of the royalty.

We derive some further support for our conclusion from the case of *Uzee v. Bollinger*, 178 So.2d 508 (La.App. 1st Cir. 1965). While the precedential value of this case is quite questionable under the new Mineral Code,[6] the agreements in question were consummated long before the adoption of the Code and are therefore not necessarily controlled by the provisions therein.[7] Insofar as they are material to the instant case, the facts in *Uzee* were that Uzee sold her land to Bollinger, reserving a quarter of the minerals but transferring the executive interest[8] to all the land. Bollinger eventually granted a lease to Roussel, and Bollinger received a 1/16 "overriding royalty." The court held that the overriding royalty was in the nature of a bonus and that therefore Uzee was not entitled to share in the override. Since the override was between a lessor (Bollinger) and a lessee (Roussel), under defendant's view in the instant case the override should have been classified as an additional lessor's royalty. In our case, we also have a lessor and lessee who have agreed that overriding royalty should be paid; under *Uzee*, it should not be classified as lessor's royalty.

*CONCLUSION*

For the reasons assigned, it is our considered opinion that claims regarding the 1945 royalty are prescribed by three years and that the claims regarding the 1962 royalty are not. As pointed out by plaintiff in oral arguments, the applicability of the ten-year prescription is not at issue, so we do not decide that question. Furthermore, plaintiff is entitled to add an additional 30 days to each of his claims, representing the time during which prescription was suspended.

**6.** *See* Comment to Article 213 of the Louisiana Mineral Code (R.S. 31:213, Comment, paragraph 2). See also Comment to Article 109 (R.S. 31:109, Comment, paragraph 1).

**7.** *See* Article 214 of the Louisiana Mineral Code (La.R.S. 31:214), which provides,

The provisions of this Code shall apply to all mineral rights, including those existing on the effective date hereof; but no provision may be applied to divest already vested rights or to impair the obligation of contracts.

**8.** The executive interest is, in essence, the right to lease the land for oil, gas, and mineral exploration. See Louisiana Mineral Code Articles 105–113 (La.R.S. 31:105–113).