155 So. 228

## MT. FOREST FUR FARMS OF AMERICA, Inc., v. COCKRELL.

### No. 31791.

March 26, 1934.

Rehearing Denied May 21, 1934.

Lazarus, Weil & Lazarus and Isaac S. Heller, all of New Orleans, for appellant.

Herold, Cousin & Herold, of Shreveport, for appellee.

Neil A. Armstrong, curator ad hoc.

OVERTON, Justice.

This is an appeal from a judgment sustaining an exception of no cause of action in

a suit to recover $50,000 paid by the Gulf Refining Company to defendant on account of a mineral lease, and for an accounting of such other sums as defendant may have received in the granting of the lease, or for extensions thereof.

The facts out of which the suit grows, as appears from the petition, are that in April, 1927, defendant sold to a corporation, styled the Mt. Forest Fur Farm, a 127/150 undivided interest in a 52,000-acre tract of marsh land in Plaquemines parish, reserving to himself certain mineral rights. The reservation was prepared by defendant and, at his instance, was inserted in the act of sale. The reservation, which it is important to observe carefully, reads as follows:

"This vendor [that is defendant] *is vested with and retains for himself, his heirs and assigns, and reserves from this sale*, a perpetual royalty, equal to one-eighth of all minerals, including oil, gas, and sulphur, which may be found in, under, upon or beneath the lands hereinabove described, *together with perpetual and exclusive rights to make and execute mineral leases on all or any portion of said lands* for the exploration, development, production and marketing of any and all of said minerals, and also including perpetual rights of ingress and egress solely for said purpose of exploration, development, production and marketing of said minerals at all times, and likewise the use of so much of the surface of said premises as may be found necessary and convenient for the exploration, development, production and marketing of said minerals which may be found and produced from said premises." (Italics ours.)

Nearly two years after the execution of this sale, containing the mineral reservation,

defendant executed a mineral lease on the property to the Gulf Refining Company of Louisiana for $10 and other valuable considerations. In fact, defendant received from the Gulf Refining Company, as appears from the allegations of the petition, aside from the right to royalties, a bonus of $25,000 for the lease. Later, he received $25,000 additional from the Gulf Refining Company, for an extension of time on the lease within which to explore for minerals. These amounts, as well as such other sums as defendant may have received by granting the lease and extending the term or terms thereof, are the amounts which plaintiff demands in this suit from defendant.

It may be observed here, at least for purposes of clarity, that, in granting the foregoing lease and the extension thereof, defendant did so in his own right, and not as agent for anyone.

After defendant had granted the lease, the Mt. Forest Fur Farms transferred the property, acquired by it, to plaintiff herein, including the claim here asserted.

Plaintiff's right to the sums, claimed by it, both sides agree, is dependent upon the correct construction of the mineral reservation. This reservation is differently framed, in some respects, from any that has heretofore been before this court.

It is plaintiff's position that the reservation, when it comes to the negotiation of leases, makes defendant, by implication, its agent, and therefore it is defendant's duty, under the law of principal and agent, to account to it for the bonus and the amount received for the extension, and for such other sums of this nature that defendant may have received.

It is defendant's position that the reservation makes him the owner of the bonus, and kindred sums, such as the sum received for the extension of the lease, and that, being owner of such sums, he is under no obligation to account to anyone for them.

As observed by counsel for the defendant, aside from the landowner's exploring his own land for minerals, he has only two possible sources of income or profit in dealing with his land: (1) The cash consideration or bonus which he may receive for the lease, and payments made for renewals of the lease; and (2) the royalty.

There is no reason why, in disposing of his land, the landowner may not reserve to himself both of these sources, nor is there any reason why he should not reserve but one of them, or a percentage of one or of both. The question here is, to put it in another form: Has the landowner reserved any one of these sources, barring royalties?

Defendant was, prior to the transfer to plaintiff's predecessor, the owner of the entire title to the land conveyed. Aside from royalties, with which we are not here concerned, defendant unquestionably retained for himself, his heirs and assigns (as appears from the wording of the excerpt from the sale of the land, quoted above), the perpetual and exclusive right to make and execute mineral leases on all or any portion of the land.

It seems to us that defendant was here retaining, with the consent of plaintiff's predecessor, the exclusive right to lease, not for the mere privilege of selecting the lessee, or of

fixing the terms of the lease, but for the purpose of obtaining from the lease or the granting of it, for himself, his heirs and his assigns, all that the lease might bring, save as therein specified. Bonuses and the costs of extensions are not specified as excepted from the reservation. This construction is in accord with the wording of the reservation, and apparently with the intention of the parties. The reservation of the right to lease was not reserved to lease as agent, but was reserved for defendant, the owner of the land, then being sold, his heirs and assigns, which means that the reservation was for their benefit, save as otherwise expressed therein.

Under this construction, plaintiff has no right to the amounts sued for.

The judgment is therefore affirmed.

ODOM, J., dissents.

ST. PAUL, J., absent.