LE BLANC, Justice.
 

 The plaintiffs were formerly the owners of an
 
 ¥12
 
 undivided interest in a certain tract of land situated in the Parish of St. Martin which, together with an additional %o undivided interest acquired by one of them, Emile Ledoux, they sold to the defendants, Pothier J. Voorhies and Paul J. Blanchet, by various deeds executed during the month of May, 1941. Each deed contained the following clause:
 

 “And with the said tract of land, we have sold and do by these presents sell, transfer and deliver, only %4ths of all the oil, gas and other minerals situated in, on, under and that may be produced from the said tract of land, and therewith all rights to explore for, exploit, and enjoy said minerals. Vendors hereby reserve for themselves and their assigns the other %4ths of the said minerals, but it is understood that in no event shall the mineral rights of the purchasers herein be less than. the %4ths herein transferred. But it is agreed that the purchasers, and their heirs and assigns, shall have the exclusive right and authority to execute at any time a lease or leases covering said land in whole or in part, and including the mineral rights of the vendors, their heirs or assigns, which are not herein sold, without the vendors’ joinder, and, without the joinder of their heirs or assigns: the purchasers, their heirs or assigns, binding and obligating themselves to include said interest in any lease or leases made by them of their own mineral rights, or part hereof.
 
 If oil, gas or other minerals is produced under such lease, the royalties shall be apportioned between the vendors, their heirs or assigns, and purchasers, their heirs and assigns, in the proportion in which they ozvn said mineral
 
 rights" (Emphasis ours).
 

 On April 28, 1944, the defendants executed a mineral lease of the said property to A. B. House for a stated consideration of $2,896, or $50 per arpent and a delay rental of $50' per arpent payable April 28, 1945, unless drilling operations were commenced, and a like delay rental clause for a primary term of four years. On May 3, 1944, House, who was acting as their agent in securing the lease, assigned the same to his principals, Continental Oil Company and Standard Oil Company Of Kansas, both foreign corporations.
 

 
 *203
 
 Contending that under the reservation clause in their deed of the land to Voorhies and Blanchet, they were entitled to receive the bonuses, delay rentals and other benefits of any lease made by them, plaintiffs ■demanded the amounts received under the lease granted to House and upon being refused, they instituted this suit.
 

 Plaintiffs allege in their petition that when making the transfers and conveyances to Voorhies and Blanchet it was their intention to reserve unto- themselves, their heirs and assigns, one-half of their right, title and interest in and to all of the oil, gas and minerals situated in, on, under and that may be produced- from the property, together with the right, as mineral owners, to collect any consideration, bonuses and rentals paid for and in connection with any future oil, gas or mineral lease of the property in the proportion to the undivided interest which each reserved and that each thought it was so understood by the vendees.
 

 They further aver,
 
 on
 
 information and belief, that the true consideration paid defendants for the lease entered into with A. B. House was the sum of $7,241.25 and that the delayed rentals were in truth and in fact the sum of $125 per arpent and in addition the lessors received as part consideration, an overriding royalty interest, the exact proportion being unknown to them but they are entitled to receive their proportionate share therein according to their ownership of the mineral rights in the land. They allege that the said lease should be reformed and amended so that it may reflect the true situation and that it is necessary that the assignees of the same, Continental Oil Company and Standard Oil Company of Kansas, be made parties to this proceeding.
 

 After praying for a monied judgment against the defendants Voorhies and Blanchet, in solido, in favor of each plaintiff for the proportionate amount claimed by each for the bonuses and delayed rentals under the lease. granted to A. B. House, plaintiffs further pray for judgment against all parties made defendants, reforming, modifying and amending the said lease so that the same will reflect the true and actual consideration, bonuses and overriding royalty paid therefor and the true and actual delay rentals due by lessee or his assigns in the exercise of the delayed drilling clause containedin the said lease.
 

 An exception of no cause of action Was filed on behalf of- the defendants, Pothier J. Voorhies, Paul J. Blanchet and A. B. House and separate exceptions of no cause or right of action on behalf of each, Continental Oil Company and Standard Oil 'Company of Kansas. All of them were sustained by the trial judge and judgment entered accordingly, dismissing plaintiffs’ suit at their costs. From that judgment they have appealed devolutively.
 

 The district judge did not assign written reasons for judgment but we are given to understand by counsel on both sides that
 
 *205
 
 he maintained the exceptions or the authority of the decision of this court in the case .of Mt. Forest Fur Farms, Inc. v. Cockrell, 179 La. 795, 155 So. 228. That case, like the present, involved the interpretation of a mineral reservation clause in a sale of land. The clause in the deed as quoted in the opinion, reads as follows:
 

 “This vendor [that is defendant]
 
 is vested with and retains for himself, his heirs and assigns, and reserves from this sale,
 
 a perpetual royalty, equal to one-eighth of all minerals, including oil, gas, and sulphur, which may be found in, under, upon or beneath the lands hereinabove described,
 
 together with perpetual and exclusive rights to make and execute mineral leases on all or any portion of said lands
 
 for the exploration, development, production and marketing of any and all of said minerals, and also including perpetual rights of ingress and egress solely for said purpose of exploration, development, production and marketing of said minerals at all times, and likewise the use of so much of the surface of said premises as may be found necessary and convenient for the exploration, development, production and marketing of said minerals which may be found and produced from said premises.”
 

 It is significant that in both reservation clauses no reference whatever is made to the bonuses, rentals or whatever other benefits may flow from the lease. In this connection it is important to note that, in the' Mt. Forest case, the Court pointed out that aside from the landowner’s exploring his" own land for minerals, he has only two possible sources of income or profit in dealing with the land; these are (1) the cash consideration, also called the bonus which he may receive for the lease, and the delayed rentals or payments made for renewals of the lease, and (2) the royalty which he may receive from production of oil, gas or other minerals. Following this it is stated that there is no reason why he may not reserve both sources when he transfers the land, nor is there any reason why he should not reserve but one of them, or a percentage of one or- of both.
 

 In that case, as is to be. noted from the quoted reservation, it was the defendant who was the former landowner and who had reserved the right to execute mineral leases. His vendee was the Mt. Forest Fur Farms and after the lease had been granted, they sold the property, including the claim asserted by it, to the plaintiff, Mt. Forest Fur Farms, of America, Inc. In endeavoring to arrive at the intention of the parties insofar as it was reflected from the wording of the reservation, the opinion contains a statement which we think is important to keep in mind in construing, the clause in this case for that same purpose. This is what the court said:
 

 
 *207
 
 “It seems to us that defendant was here retaining, with the consent of plaintiff’s predecessor, the exclusive right to lease, not for the mere privilege of selecting the lessee, or of fixing the terms of the lease, but for the purpose of obtaining from the lease or the granting of it, for himself, his heirs and his assigns, all- that the lease might bring, save as therein specified. Bonuses and the costs of extensions are not specified as excepted from the reservation. This construction is in accord with the wording of the reservation, and apparently with the intention of the parties. The reservation of the right to lease was not reserved to lease as agent, but was reserved for defendant, the owner of the land, then being sold, his heirs and assigns, which means that the reservation was for their benefit, save as otherwise expressed therein.”
 

 The only difference in the situation between the parties in this case is that the plaintiffs, the former landowners, in transferring the property reserved for themselves, one-half of the mineral rights which they owned, but they, granted to their vendees, the defendants Voorhies and Blanchet, who became the landowners, the same exclusive right to execute mineral leases. They accordingly divested themselves of any right they may have had to lease, and in transferring that right exclusively to their- vendees, they, to paraphrase the quoted portion of the Mt. Forest case, did so for the purpose of obtaining for themselves, their heirs and assigns,
 
 all that the lease might bring, save as therein specified.
 
 Bonuses and delayed rentals were sources of income or profit which leases
 
 might
 
 bring; they were not specified as being excepted from the reservation and the 'court, in construing the reservation, is not at liberty to add or detract from its provisions which apparently convey its meaning and the intention of the parties.
 

 The reservation in this case appears to. us to reflect more clearly than did that' in the Mt. Forest case, the idea that bonuses and rentals under leases were never intended to be retained under its terms because the clause granting their vendees the exclusive right to lease is immediately followed by another clause providing for an apportionment of the royalty in case of production under
 
 such
 
 leases. The parties were undoubtedly contemplating all sources of income to be derived from the transaction between them and it strikes us that if they had had the bonuses and rentals in mind as well as the royalties, these would have been specified also.
 

 The fact that the reservation clause binds and obligates the purchasers of the land to include the reserved interest of the vendors in any lease or leases made by them is a matter of no importance in construing the issue that is before us. It may well be that plaintiffs had this clause inserted because having divested themselves of
 
 *209
 
 their right to lease they wanted to make sure that their interest would share in the eventual production of minerals under any lease.
 

 It is urged also on behalf of plaintiffs that the reservation clause in this case differs from the one in the Mt. Forest case in that here there was a reservation of minerals whereas in the Mt. Forest case the reservation of a royalty was involved. But in this case the plaintiffs granted to the defendants the exclusive right to execute leases, the same right which Cockrell reserved to himself, in addition- to his royalty reservation, and in that respect the reservations are similar. It was from such right being vested in him that Cockrell was held entitled, in the Mt. Forest case, to the bonuses and rentals, in addition to the royalties he had specifically reserved, and this, because the bonuses and rentals are derived from the lease itself and not from the minerals when produced.
 

 We do not think that the reservation in this case is any more ambiguous than that in the Mt. Forest case and it is unnecessary therefore to remand the case to the district court for the purpose of having parol testimony adduced to determine the true intent of the parties as demanded by the plaintiffs in their alternative plea.
 

 For the reasons stated it is ordered that the judgment appealed from be, and the same is, hereby affirmed at the costs of plaintiffs, appellants herein.