414 So.2d 1199 (1981)
Mrs. Myrtle Devall ANDRUS, et al.
v.
Kenneth H. KAHAO, J. King Woolf, Jr. and Ashland Plantation, Inc.
No. 81-C-1678.
Supreme Court of Louisiana.
December 14, 1981.
On Rehearing May 17, 1982.
Rehearing Denied July 2, 1982.
*1200 John L. Olivier, and John Tarlton Olivier, of Olivier & Brinkhaus, Sunset, for plaintiff-applicant.
R. Gordon Kean, Jr., and Gary A. Bezet, of Sanders, Downing, Kean & Cazedessus, Baton Rouge, for defendants-respondents.
John M. McCollan, of Gordon, Arata, McCollman & Stuart, New Orleans, George W. Hardy, III, of Broadhurst, Brook, Mangum, Hardy & Reed, Lafayette, John C. Christian & Claude E. Hall, of Milling, Benson, Woodard, Hillyer, Pierson & Miller, New Orleans, Amicus Curiae, for defendants-respondents.
LEMMON, Justice.
This is a suit to recover one-half of the bonus money and delay rentals paid to defendants under a mineral lease. The issue is whether plaintiffs' grant to defendants of the exclusive right to enter into mineral leases included the right to retain bonuses and rentals payable under leases subsequently executed by defendants pursuant to that grant.

I.
In 1969 plaintiffs sold certain immovable property to defendants Kahao and King. The act of sale contained the following provision:[1]
"Sellers herein reserve an undivided one-half interest in and to all the outstanding minerals, the other undivided one-half interest being conveyed herein to Purchasers. The Purchasers shall have the exclusive right without the necessity of securing the joinder or consent of Sellers to enter into any oil, gas or mineral leases as they may deem fit, and such terms and conditions as they may deem fit and proper, provided, however, that no lease be executed for less than a one-sixth royalty."
These defendants subsequently sold the property to defendant Ashland Plantation, Inc. In 1973 Ashland entered into an oil, gas and mineral lease, and the lessee paid Ashland the bonuses and annual rentals due under the terms of the lease.
Plaintiffs claimed a share of the bonuses and rentals, ultimately filing this suit when Ashland rejected their claim. The trial court maintained defendants' exception of *1201 no cause of action, and the court of appeal affirmed. 400 So.2d 1194. We granted certiorari to review those judgments. 404 So.2d 280.

II.
Generally, only the landowner (who has not completely divested himself of mineral servitude rights) and the servitude owner have the right to lease property for mineral exploration and to share in bonus money and delay rentals due under the lease. On the other hand, the royalty owner has no right to lease or to share in bonuses and rentals, but has only the right to receive a fractional share of the production in the event that production is achieved.[2]Humble Oil Refining Co. v. Guillory, 212 La. 646, 33 So.2d 182 (1947). Of course, the party with the right to lease (because of being a landowner or a servitude owner) can grant that right to another.[3] The instant case presents the question: when a party with the right to lease grants merely that exclusive right to another party, does the grant also convey the right to receive bonuses and rentals, in the absence of an express provision in the contract? Determination of this question fundamentally involves the intention of the parties to the contract in which the exclusive right to enter into leases was granted.
At the time the contract was executed there was no statutory law providing for the transfer or retention of the right to receive bonuses and rentals when a party with the right to lease granted that right to another.[4] In the absence of positive law or an express provision in the contract regarding the transfer or retention of the right to receive bonuses and rentals, the intention of the parties is the determinative factor. C.C. Art. 1945. Thus, the decision in this case depends upon the intent of the parties.
The interpretation of the contractual provision adopted by the lower courts is that the parties implicitly intended for plaintiffs to transfer their right to receive bonuses and rental, thereby effectively reducing the basic mineral interest retained in the contract from a servitude to a royalty. We decline to hold that the language of the contract requires that interpretation.[5] In our opinion the contractual provision is subject to more than one interpretation, and evidence should have been presented in order for the court to determine the intention of the parties.
*1202 The exception of no cause of action is seldom an appropriate vehicle for adjudicating the rights of parties under an ambiguous contract in which several competing inferences can be drawn as to the intention of the parties. At this stage of the proceedings nothing has been presented to the courts which compels the conclusion that plaintiffs intended to transfer their right to receive income from bonuses or rentals. It is at least equally probable (or arguably even more probable) that plaintiffs intended to retain that right.[6] Neither the contractual provision nor the statutory law at the time of the contract settles the question.
Under these circumstances the trial court erred in maintaining defendants' exception of no cause of action.[7] The matter must be tried on the merits to determine the intention of the parties. Accordingly, the judgments of the lower courts are reversed, and the exception of no cause of action is overruled. The case is remanded to the trial court for a trial on the merits. Costs in the appellate courts are assessed to defendants.
WATSON, J., concurs in the result.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., dissents for reasons assigned by MARCUS, J.
MARCUS, Justice (dissenting).
I agree with the rulings of the courts below and this court's decisions in Ledoux v. Voorhies, 222 La. 200, 62 So.2d 273 (1952), and Mt. Forest Fur Farms of America, Inc. v. Cockrell, 179 La. 795, 155 So. 228 (1934), which cases were overruled by the majority in footnote 7. My view is also in accordance with the new Mineral Code. See La. R.S. 31:105. Accordingly, I respectfully dissent.

ON REHEARING
CALOGERO, Justice.
As is evident from our opinion on original hearing, we are presented in this case with the question of whether the trial court properly sustained the defendant's exception of no cause of action filed in response to plaintiffs' petition for a share of the bonuses and delay rentals paid to the defendant Ashland Plantation.
On original hearing, persuaded by plaintiffs' contention that the parties intended, as to bonuses and rentals under prospective leases, the conveyance of only a proportionate interest in keeping with the mineral conveyance, we reversed the lower court judgments and ordered the case remanded to the trial court to give plaintiffs an opportunity to prove their claims. In doing so, we overruled two prior cases of this Court, Mt. Forest Fur Farm of America, Inc. v. Cockrell, 179 La. 795, 155 So. 228 (1934) and Ledoux v. Voorhies, 222 La. 200, 62 So.2d 273 (1952).
We granted a rehearing to reconsider our decision and our overruling of that long standing jurisprudence. Although our original opinion properly expressed this Court's view that, generally, disputes over the intent of the parties to a contract, where that contract is silent, should not be resolved by an exception of no cause of action, we now determine that, at least in this case, where *1203 prior jurisprudence has expressly and unequivocally resolved how that silence should be interpreted, the matter can and should be resolved upon the exception of no cause of action.
In 1969 plaintiffs sold their interests in immovable property to defendants, Kenneth Kahao and J. King Woolf.[1] One of the clauses in the contract provided that the sellers reserved an undivided one-half interest in and to all outstanding minerals, and conveyed the other undivided one-half interest to the purchasers, along with the exclusive right to enter into any oil, gas or mineral leases under such conditions as the purchaser should deem fit.
Defendants Kahao and Woolf later sold all of their interest to defendant Ashland. Thereafter, in 1973, Ashland entered into an oil, gas and mineral lease. The lessee paid to Ashland the agreed upon bonuses and rentals due under the terms of the lease.
Plaintiffs filed the instant suit in January of 1979, claiming entitlement to their share of the bonuses and rentals that had been paid to Ashland. Defendants responded to plaintiffs suit by filing an exception of no cause of action. Their contention is that a clause in the contract conveying to them the exclusive right to execute all oil, gas and mineral leases effected a conveyance, as well, of the right to all bonuses and rentals. The clause, as quoted in defendants' pleadings, provides:
Sellers herein reserve an undivided one-half interest in and to all the outstanding minerals, the other undivided one-half interest being conveyed herein to Purchasers. The Purchasers shall have the exclusive right without the necessity of securing the joinder or consent of Sellers to enter into any oil, gas or mineral leases as they may deem fit, and such terms and conditions as they may deem fit and proper, provided, however, that no lease be executed for less than a one-sixth royalty.
Defendants argue that the exclusive right to lease, conveyed to them by the above quoted provision, was the "executive right" which includes the right to retain bonuses and rentals unless otherwise provided in the contract. They rely upon Mt. Forest Fur Farm of America, Inc. v. Cockrell, supra, and Ledoux v. Voorhies, supra, in support of their contention.
In Mt. Forest, supra, a 1934 decision, this Court affirmed a lower court judgment sustaining an exception of no cause of action under facts very similar to those presented here. In that case it was the vendor who, in a sale of immovable property with reservation of certain mineral rights, reserved unto himself the exclusive right to execute mineral leases. The reservation, prepared by the vendor/defendant and inserted in the act of sale, provided in pertinent part:
This vendor [defendant] is vested with and retains for himself, his heirs and assigns, and reserves from this sale, a perpetual royalty, equal to one-eighth of all minerals, including oil, gas, and sulphur, which may be found in, under, upon or beneath the lands hereinabove described, together with perpetual and exclusive rights to make and execute mineral leases on all or any portion of said lands for the exploration, development, production and marketing of any and all of said minerals....
Nearly two years after the sale defendant executed a mineral lease on the property. He received a $25,000 bonus, and later $25,000 in delay rentals for extending the lease. Vendee/plaintiff filed suit demanding his portion of those sums.
In rejecting plaintiff's argument that the reservation of the exclusive right to make and execute mineral leases amounted to nothing more than an agency, the Court held that the reservation of the exclusive right to lease included the right to the "bonuses and costs of extensions" since they *1204 "were not specified as excepted from the reservation." In reaching this result, the Court observed:
[A]side from the landowner's exploring his own land for minerals, he has only two possible sources of income or profit in dealing with his land: (1) The cash consideration or bonus which he may receive for the lease, and payments made for renewals of the lease; and (2) the royalty.

* * * * * *
It seems to us that defendant was here retaining, with the consent of plaintiff's predecessor, the exclusive right to lease, not for the mere privilege of selecting the lessee, or of fixing the terms of the lease, but for the purpose of obtaining from the lease or the granting of it, for himself, his heirs and his assigns, all that the lease might bring, save as therein specified.
The next, and only other case, directly addressing the issue was Ledoux v. Voorhies, supra. Therein this Court also held that the exclusive right to execute mineral leases carried with it the exclusive right to the bonuses and rentals. The only difference between Mt. Forest and Ledoux is that in Ledoux the vendee was conveyed the exclusive right to execute mineral leases with the vendor reserving only a mineral interest, while in Aft. Forest the vendor who reserved a mineral interest also reserved the exclusive right to lease. The act of sale in Ledoux contained the following provision:
And with the said tract of land, we have sold and do by these presents sell, transfer and deliver, only 8/24ths of all the oil, gas and other minerals situated in, on, under and that may be produced from the said tract of land, and therewith all rights to explore for, exploit, and enjoy said minerals. Vendors hereby reserve for themselves and their assigns the other 8/24ths of the said minerals, but it is understood that in no event shall the mineral rights of the purchasers herein be less than the 8/24ths herein transferred. But it is agreed that the purchasers, and their heirs and assigns, shall have the exclusive right and authority to execute at any time a lease or leases covering said land in whole or in part, and including the mineral rights of the vendors, their heirs or assigns, which are not herein sold, without the vendors' joinder, and, without the joinder of their heirs or assigns: the purchasers, their heirs or assigns, binding and obligating themselves to include said interest in any lease or leases made by them of their own mineral rights, or part thereof. If oil, gas or other minerals is produced under such lease, the royalties shall be apportioned between the vendors, their heirs or assigns, and purchasers, their heirs and assigns, in the proportion in which they own said mineral rights.
Defendants later executed a mineral lease on the property for a bonus of $2,896.00 and a delay rental of $50.00 per arpent payable every April 28th for the next four years unless drilling operations were commenced.[2] Plaintiffs filed suit for their proportionate share of the bonuses and rentals, contending that it was their intention to reserve, as relates to the bonuses and rentals, the same interest which they had reserved in and to the minerals. Defendants filed an exception of no cause of action, which was sustained. This Court affirmed that ruling holding that "the bonuses and rentals are derived from the lease itself and not from the minerals when produced" and thus plaintiffs were not entitled to a proportionate share of them, having conveyed to defendants the exclusive right to lease. The Ledoux Court, relying on Mt. Forest, stated:
Bonuses and delayed [sic] rentals were sources of income or profit which leases might bring; they were not specified as being excepted from the reservation and *1205 the court, in construing the reservation, is not at liberty to add or detract from its provisions which apparently convey its meaning and the intention of the parties.[3]
Although the Court noted that the case at bar was different from the Mt. Forest case because in the latter it was the vendor who reserved the exclusive right to execute mineral leases and in Ledoux it was the vendees who had been conveyed the exclusive right to lease, it found no significance in the distinction. Rather, the Court held that it was the same exclusive right to execute mineral leases involved in both cases, and that right carried with it the exclusive right to "`all that the lease might bring, save as therein specified.'" Mt. Forest v. Cockrell, supra, at 229. The Ledoux Court was also persuaded in this view by the wording of the reservation itself, stating:
The reservation in this case appears to us to reflect more clearly than did that in the Mt. Forest case, the idea that bonuses and rentals under leases were never intended to be retained under its terms because the clause granting their vendees the exclusive right to lease is immediately followed by another clause providing for an apportionment of the royalty in case of production under such leases. The parties were undoubtedly contemplating all sources of income to be derived from the transaction between them and it strikes us that if they had had the bonuses and rentals in mind as well as the royalties, these would have been specified also.
The present case is in no essential particulars distinguishable from Ledoux; the facts as well as the reservation clause are very similar. As in Ledoux, it was the vendors in this case who sold their interests in the land to defendants along with "the exclusive right without the necessity of securing the joinder or consent of the Sellers to enter into any oil, gas or mineral leases as they may deem fit," and who reserved to themselves only an interest in the minerals. The Ledoux case dictates our sustaining the exception of no cause of action filed by the defendants here. That is why on original hearing, in overruling defendant's exception of no cause of action we found it necessary to overrule Ledoux, and Mt. Forest as well.
Upon reconsideration we now determine that our original opinion was wrong. There is ample reason to follow the jurisprudence rather than overrule it, not the least of which is to maintain consistency in the mineral law jurisprudence.
The Louisiana Civil Code substantially predates the development of the oil and gas industry in Louisiana. Consequently, the framers of the Code did not contemplate the many and varied legal questions and problems which would arise in the course of development of that industry. With scant Codal or other statutory guidance this Court was called upon to resolve legal questions, and decide cases in which such questions arose. One such question was presented in a fact situation much like those prevailing in the case before us in the 1934 Mt. Forest case, and in its successor Ledoux. And it was there determined that a clause in an act of sale, reserving to the vendor (or granting) the exclusive right to execute mineral leases also reserved to him (or granted) the exclusive right to the bonuses and delay rentals.
These decisions have created rules of property. Bond v. Midstates Oil Corp., 219 La. 415, 53 So.2d 149 (1951); St. Martin Land Co. v. Pickney, 212 La. 605, 33 So.2d 169 (1947). And, because they have been relied upon for many years by those dealing with mineral rights in this state, should not be overruled, for, as stated in St. Martin:
It is well settled that decisions of the highest court of a State on the subject of oil rights establish rules of property and should not be reversed unless it be by an *1206 act of the Legislature even should a different rule be deemed more logical. Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264 and the authorities cited therein.
The Legislature has not to this day seen fit to pronounce different rules. On the contrary the rulings of Mt. Forest and Ledoux have since been codified in the new Mineral Code.
The Louisiana Mineral Code was adopted by Act 50 of 1974, effective January 1, 1975. As stated by the Louisiana State Law Institute in the introduction to the Mineral Code, "the Mineral Code is designed in large measure to supplant by way of codification the extensive jurisprudence that developed in this area of the law." Although perhaps not directly controlling because adopted after the date of the pertinent sale in this case, it is nevertheless to be considered.
Article 105 of the Mineral Code provides:
The executive right is the exclusive right to grant mineral leases of specified land or mineral rights. Unless restricted by contract it includes the right to retain bonuses and rentals. The owner of the executive right may lease the land or mineral rights over which he has power to the same extent and on such terms and conditions as if he were the owner of a mineral servitude.
The Comments to Article 105, after outlining the facts and holdings in Mt. Forest v. Cockrell, supra, and Ledoux v. Voorhies, supra, recite:
Based on these cases and the general view with which they are harmonious, Article 105 defines the executive right as the exclusive right to lease, including the right to retain bonuses or other property given for the execution of leases and rentals or other property given for their maintenance, extension, or renewal.
Thus it is clear that Article 105 was intended to be a codification of the existing jurisprudence dealing with the subject, and as can be seen by our review of that jurisprudence, it was just that.
The Mineral Code, in Article 214, also expressly addresses the applicability of the Code to existing mineral rights. Article 214 provides:
The provisions of this Code shall apply to all mineral rights, including those existing on the effective date hereof; but no provision may be applied to divest already vested rights or to impair the obligation of contracts.
According to the Comments to this article, it was the feeling of the Law Institute that public policy dictated, to the extent possible, that there be one comprehensive body of law governing all mineral rights, thus ensuring consistency in the area as well as simplicity in judicial administration. The idea that there would be two distinct bodies of mineral law, one governing the rights existing prior to the effective date of the Mineral Code and one consisting of the Mineral Code and the interpretive jurisprudence applicable to rights created after its enactment, was deemed to be an undesirable result and to be avoided if possible. Thus, it is provided in the Comments to Article 214:
The chosen approach to this problem is to adopt a general principle making the provisions of the code retrospective in operation to the extent not violative of the state and federal constitutions. Thus, unless an individual can satisfy a court that he is deprived of a vested right without just compensation or that the obligations of a contract are impaired, the rules specified in the Mineral Code apply to both existing and future rights.
Not only have plaintiffs herein not satisfied the Court that they are being deprived of vested rights or that the obligations of their contract are being impaired, but to the contrary, under the jurisprudence in effect at the time this contract was entered into, it is clear that the jurisprudence as it stood at that time supported a result in defendants' favor. The conveyance of "the exclusive right ... to enter into any oil, gas or mineral leases as they may deem fit" effected also the conveyance of the right to any bonuses or rentals derived from entering *1207 into a lease, as those payments are nothing more than consideration for the exercise of the right to lease. Mt. Forest v. Cockrell, supra.
Although plaintiffs argue that it was never their intention to convey the right to all the bonuses and rentals to defendants, there is nothing in the record before us that supports that contention.[4] The case is therefore in the identical posture as was Ledoux. There the court found persuasive and favorable to the possessor of the executive rights the absence from the agreement of any reference to bonuses and rentals notwithstanding the inclusion of a reference to royalty apportionment. In the case under consideration there was additionally in the same clause an express limitation on the mineral lease which might be engaged (minimum one-sixth royalty) without reference to any limitation upon the enjoyment of the entire bonuses and rentals in the holder of the executive rights.
As was recited in Ledoux, "The parties were undoubtedly contemplating all sources of income to be derived from the transaction between them and it strikes us that if they had had the bonuses and rentals in mind as well as the royalties these would have been specified also."
Therefore, considering the existing jurisprudence at the time the contract was entered into, as well as the Mineral Code and the express public policy interests in fostering one comprehensive body of law in the mineral law area, we find that we erred in our original opinion in overruling the prior jurisprudence and reversing the lower courts.

Decree
For the foregoing reasons we reverse our original opinion and affirm the judgment of the Court of Appeal which held that the trial court properly sustained defendants' exception of no cause of action.
ORIGINAL OPINION REVERSED; JUDGMENTS OF THE COURT OF APPEAL AND DISTRICT COURT REINSTATED.
LEMMON, J., concurs and assigns reasons.
DIXON, C. J., dissents.
LEMMON, Justice, concurring.
The Mt. Forest and Ledoux cases were wrong as a matter of contract and procedural law, and this court on original hearing properly challenged their holdings.[1] However, cases that have established a jurisprudential rule of property law should only be overruled prospectively in order to protect contract rights previously bargained for in reliance on the decisions. Prospective overruling is not an effective way to correct the errors in these decisions, which have now been codified in R.S. 31:105. In any event, prospective overruling would not benefit these plaintiffs. I accordingly concur.
NOTES
[1] Since the judgment of the trial court maintained an exception of no cause of action, no evidence was introduced to support the objection raised by defendants. C.Civ.P. Art. 931. We therefore accept as true the allegations of the petition which paraphrased, but did not quote, the contractual provision. The exact contract language, quoted for purposes of establishing accurate and clear precedential value in this opinion, is taken from defendants' pleading, but plaintiffs do not dispute the accuracy of the quotation.
[2] Thus, if plaintiffs in the act of sale had simply reserved one-half of the minerals, they would have been entitled as servitude owners to one-half of all bonuses and rentals and as royalty owners to one-half of the royalties payable under any mineral lease. Furthermore, any prospective lessee who desired to secure a lease of all mineral interests would have been required to obtain plaintiffs' consent to the lease.
[3] Under the Mineral Code adopted in 1974 R.S. 31:105 defines the executive right as the exclusive right to grant mineral leases of specified land or mineral rights. R.S. 31:116 provides that a mineral lease may be granted by a person having an executive interest in the mineral rights on the property leased.
[4] Under R.S. 31:105, adopted by Acts 1974, No. 50, the exclusive right to grant mineral leases, in the absence of a contrary contractual provision, includes the right to retain bonuses and rentals. However, no provision of the Mineral Code may be applied to divest already vested rights. Since the mineral reservation and the mineral lease were executed prior to 1974, R.S. 31:105 is not controlling.
[5] The granting by one mineral owner to another mineral owner of the right, with stated limitations, to enter into mineral leases, without the necessity of securing the consent of the granting mineral owners, does not in and of itself raise any compelling inference that the granting mineral owners also intended to transfer their right to the bonuses and rentals. There are many logical explanations that could be attributed to the intent of the parties in entering into such an agreement. Some logical explanations are consistent with transferring the right to receive bonuses and rentals, while others are not. For example, the parties could have intended to transfer the right to bonuses and rentals as compensation for negotiating future leases. Or the parties could have intended, at the insistence of the one to whom the exclusive right was granted, that the party with the exclusive right be free to negotiate leases without interference and without fear of having a lease rejected after considerable efforts, while at the same time not intending to change the usual rights to bonuses and rentals. Other equally logical explanations may be inferred. (Plaintiffs contend their sole intent was to create a smaller bargaining unit.)
[6] It is arguably illogical that plaintiffs intended such a poor business transaction. Compensation for negotiating leases could be stipulated in terms of a percentage fee or a flat fee. If the right to bonuses and rentals were transferred to defendants as compensation for negotiating leases, then defendants could bargain to plaintiffs' detriment for a larger cash bonus and a lower royalty, subject to the limitation of at least a one-sixth royalty. On the other hand, it could be argued that plaintiffs intended to sell all of their mineral rights except for a proportionate share of a one-sixth royalty. But, as pointed out above, this argument effectively means plaintiff used language creating a servitude while intending only to reserve a royalty.
[7] The cases of Mt. Forest Fur Farms of America, Inc. v. Cockrell, 179 La. 795, 155 So. 228 (1943) and Ledoux v. Voorhies, 222 La. 200, 62 So.2d 273 (1952) affirmed judgments maintaining exceptions of no cause of action, holding that it was unnecessary to remand for the purpose of determining the true intent of the parties. These decisions are now expressly overruled.
[1] The plaintiffs in this case are apparently only six of the vendors, each with a one-eighteenth interest in the property. They seek a total of $13,222.38, or $2,203.78 each, which represents one-eighteenth each of one-half of $79,334.40, the total bonuses and rentals collected by Ashland.
[2] Plaintiffs also contended in their petition that the true consideration paid for the lease in bonus and delay rentals was greater than this, but because the exception of no cause of action was ultimately maintained, there was no need to determine the actual bonus and delay rentals.
[3] The Court in Ledoux referred to the fact that the bonuses and delay rentals were not "excepted from the reservation." Actually, they should have stated that the right to the bonuses and delay rentals was not excepted from the grant of the right to lease since in that case the right to lease was granted to the vendees rather than reserved by the vendors.
[4] In considering an exception of no cause of action, the trial court may consider only the well pleaded facts in plaintiff's petition, which are taken as true. La.C.C.P. art. 931. Plaintiffs' petition herein alleges no facts which support their contentions as to the parties' intent in entering into the agreement, nor did they incorporate in their pleadings the entire agreement. While it is true that the trial court had it within its discretion to allow plaintiffs leave to amend their petition to state a cause of action (La.C.C.P. art. 934), plaintiffs have made no such request below, or here, nor have they argued that the trial court erred in any way in not allowing the amendment.
[1] The exception of no cause of action simply is not the proper procedural vehicle to determine the unexpressed intention of the parties to a contract.